In the
United States Court of Appeals
For the Seventh Circuit

No. 00-4145

GLEN DELANEY,

Plaintiff-Appellee,

v.

GEORGE DeTELLA, GLENN MALONE,
CHRISTOPHER HUGHES, EUGENE McADORY,
CLARENCE WRIGHT, DONALD BURNS, and
DAVID WALKER,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 4476--David H. Coar, Judge.

Argued June 4, 2001--Decided July 9, 2001


  Before RIPPLE, EVANS, and WILLIAMS, Circuit
Judges.

  EVANS, Circuit Judge.  Glen Delaney, an
inmate at Stateville Correctional Center
in Illinois, filed this suit under 42
U.S.C. sec. 1983 alleging an Eighth
Amendment violation for being denied all
out-of-cell exercise opportunities for 6
months. The defendants, six guards and
the prison warden, filed a motion for
summary judgment asserting a qualified
immunity defense. District Judge David H.
Coar denied the motion and the defendants
appeal.

  In January 1995, Delaney was placed in
Stateville's segregation unit. While in
segregation, he was allowed 5 hours of
out-of-cell exercise time (yard
privileges) per week as called for by a
prison regulation./1

  In the spring of 1996, Stateville
instituted a "lockdown" for the purpose
of reviewing security measures,
conducting a "shakedown" of inmates, and
redesigning prisoner cells. The lockdown
continued for just over 6 months, and
during this time Delaney was denied all
out-of-cell exercise. His movements were
restricted to a once a week shower, three
family visits (one in April, one in May,

and one in June), and two brief trips to the prison's medical unit. During these excursions he was shackled and chained to the inmate in front and behind him. A trip to either the medical unit or the visitation center took around 10 minutes.

The segregation cells are small and cramped, measuring only about 122 inches by 43 to 56 inches. During the 6-month lockdown, Delaney says he repeatedly spoke with the correctional officer defendants (McAdory, Malone, Hughes, Walker, Burns, and Wright) about getting yard privileges so he could exercise. He also filed a grievance with Warden George DeTella. However, no out-of-cell exercise opportunities were offered to Delaney or, for that matter, to any other segregated inmates during the long lockdown.

As a result of being denied an opportunity to exercise for over 6 months, Delaney contends he suffered from migraines, heartburn, stomach cramps, neck pains, constipation, lethargy, and depression. Although he received some medication for his ailments, he requested medical attention from more senior personnel and filed grievances against several prison medical technicians.

Before Judge Coar, the defendants argued that penological interests justified the 6-month denial of exercise privileges and that guards (but not Warden DeTella) were not personally involved in the lockdown decision. On appeal, the defendants shift their focus, arguing primarily that Delaney did not suffer a serious injury and that even if he did, they were not told of the severity of his complaint.

We have jurisdiction over an interlocutory appeal from a denial of qualified immunity only when no factual issues need be resolved. Behrens v. Pelletier, 516 U.S. 299, 308 (1996); Levenstein v. Salafsky, 164 F.3d 345, 346 (7th Cir. 1998). We must review the district court's denial of qualified immunity de novo, considering all undisputed facts in the light most favorable to Delaney. Khuans v. School Dist. 110, 123 F.3d 1010, 1013 (7th Cir. 1997).

In reviewing the affirmative defense of qualified immunity, we apply a two-step approach. As a threshold issue, we

determine if Delaney has asserted a violation of a constitutional right. County of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5 (1998); Kitzman-Kelley v. Warner, 203 F.3d 454, 457 (7th Cir. 2000). We next consider whether the right was clearly established at the time the alleged violation occurred. Wilson v. Layne, 526 U.S. 603, 609, 119 S. Ct. 1692, 1697 (1999). Thus, the judge-made qualified immunity doctrine serves to protect government officials from insubstantial suits based on unforeseeable changes in the law. See Crawford-El v. Britton, 523 U.S. 574, 590 (1998).

Whether the first prong of a qualified immunity defense, as outlined by the Court in Lewis, is a mandatory step or merely a recommendation remains, to some extent, a bit of an open question. See Hudson v. Hall, 231 F.3d 1289, 1296 f.5 (11th Cir. 2000); Kalka v. Hawk, 215 F.3d 90 (D.C. Cir. 2000); Horne v. Coughlin, 191 F.3d 244 (2nd Cir. 1999). However, in recent cases where the Supreme Court considered qualified immunity defenses on summary judgment, Saucier v. Katz, 2001 WL 672265, ___ S. Ct. ___ (June 18, 2001), Wilson v. Layne, 526 U.S. 603, and Conn v. Gabbert, 526 U.S. 286, 119 S. Ct. 1292 (1999), it first addressed if a constitutional violation was asserted before moving on to the question of whether it was "clearly established" at the time of the alleged violation.

These cases, however, require only that a plaintiff allege a constitutional deprivation; thus we are required to determine only whether Delaney's allegations, if true, state a claim of deprivation. Wilson, 526 U.S. at 609; Conn, 526 U.S. at 290; see also Siegert v. Gilley, 500 U.S. 226, 232 (1991) (prior to deciding if right is "clearly established," must determine if constitutional claim is asserted at all and this determination is "purely legal").

An Eighth Amendment claim has two components-- objective and subjective. To satisfy the objective component, "the deprivation alleged must be, objectively, 'sufficiently serious.'" Henderson v. Sheahan, 196 F.3d 839, 845 (7th Cir. 1999) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). "Therefore, 'extreme

deprivations are required to make out a conditions-of-confinement claim.'" Id. (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)).

The subjective component relates to a defendant's state of mind and requires a showing of deliberate indifference. At a minimum in a case like this, an inmate must allege "actual knowledge of impending harm easily preventable." Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir. 1992) (quoting Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir. 1985)). "A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm." Id.

Delaney contends that to deny a segregated inmate all out-of-cell exercise opportunities for 6 months constitutes an objectively serious deprivation of a basic human need. In determining whether an act or omission constitutes cruel and unusual punishment, the Eighth Amendment provides little guidance. Thus, courts have added substance to its meager admonishment by consulting the "evolving standards of decency that mark the progress of a maturing society." Rhodes v. Chapman, 452 U.S. 337, 346 (1981). Thus, conditions which may have been acceptable long ago may be considered unnecessarily cruel in light of our growing understanding of human needs and the changing norms of our society. Davenport v. DeRobertis, 844 F.2d 1310, 1315 (1988) ("The conditions in which prisoners are housed, like the poverty line, is a function of a society's standard of living. As that standard rises, the standard of minimum decency of prison conditions, like the poverty line, rises too."). While the Constitution does not require that prisons be comfortable, prison conditions do violate the Constitution where they "deprive inmates of the minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347. Therefore, we consider whether a complete denial of reasonable exercise opportunities for 6 months falls below contemporary standards.

In recent years we have not only acknowledged that a lack of exercise can rise to a constitutional violation, French v. Owen, 777 F.2d 1250, 1255 (7th Cir. 1986), but have concluded that

"exercise is now regarded in many quarters as an indispensable component of preventive medicine." Anderson v. Romero, 72 F.3d 518, 528 (7th Cir. 1995). Given current norms, exercise is no longer considered an optional form of recreation, but is instead a necessary requirement for physical and mental well-being.

Although we have recognized the value of exercise and its medicinal effects, we have also consistently held that short-term denials of exercise may be inevitable in the prison context and are not so detrimental as to constitute a constitutional deprivation. Thomas v. Ramos, 130 F.3d 754, 764 (7th Cir. 1997) (70-day denial permissible); Harris v. Fleming, 839 F.2d 1232, 1236 (7th Cir. 1988) (28-day denial not deprivation); Shelby County Jail Inmates v. Westlake, 798 F.2d 1085, 1089 (7th Cir. 1986) (limited recreational activities sufficient, where average prison stay was 10 days or less); Caldwell v. Miller, 790 F.2d 589, 601 (7th Cir. 1986) (no deprivation where exercise was denied for 30 days, but then allowed one hour indoor exercise for next 6 months); but see Antonelli v. Sheahan, 81 F.3d 1422, 1432 (7th Cir. 1996) (viable constitutional claim where prisoner denied recreational opportunities for 7 weeks); Jamison-Bey v. Thieret, 867 F.2d 1046, 1048 (1989) (reversing summary judgment for prison officials where segregated prisoner denied exercise for 101 days).

Here, both in duration and severity, the nature of Delaney's alleged deprivation was significant and serious, and apparently no alternatives were made available to mitigate the effects of the deprivation. We recently noted that segregation is akin to solitary confinement and that such confinement, uninterrupted by opportunities for out-of-cell exercise "could reasonably be described as cruel and, by reference to the current norms of American prisons, unusual." Pearson v. Ramos, 237 F.3d 881, 884 (7th Cir. 2001). Except for limited calisthenics inside his small cell, the defendants do not argue that Delaney had any other recreational alternatives or access to common areas which may have mitigated the severity of a 6-month denial of yard privileges. See Harris, 839 F.2d at 1236 (no serious deprivation

where segregated inmate retained ability to move freely through unit and could improvise exercise regimen); Shelby, 798 F.2d at 1089 (no violation where prisoners had access to common area exercise bikes). Here, for 6 months, Delaney remained in a cell the size of a phone booth without any meaningful chance to exercise.

Nor can the defendants argue that the 6-month denial was brought on by Delaney's misconduct or propensity to escape. See Pearson, 237 F.3d at 885 (four consecutive, 90-day denials of out-of-cell exercise privileges for serious violations of prison disciplinary rules not cruel and unusual punishment); LeMaire v. Maass, 12 F.3d 1444, 1457-58 (9th Cir. 1993) (no Eighth Amendment violation where prisoner denied out-of-cell exercise for 5 years because inmate posed constant threat of attack); Martin v. Tyson, 845 F.2d 1451, 1456 (7th Cir. 1988) (no constitutional violation for 4-month denial of exercise where prisoner posed escape risk). Rather, the parties agree that Delaney was not a fractious inmate and his yard privileges, prior to the lockdown, were never withheld for disciplinary purposes.

While there may in certain cases be legitimate penological reasons justifying an extended denial of exercise privileges, here none are presented. Citing the lockdown, the defendants merely say, in conclusory fashion, that allowing inmates yard time for exercise would pose a "potential security threat." This unsupported statement is insufficient. Given the length of this exercise restriction, the state defendants should have, but didn't, advance any legitimate penological need for denying all forms of outside exercise.

The defendants also argue that the denial of all exercise opportunities was not an objectively serious deprivation because Delaney didn't provide expert testimony showing that his physical health was threatened by the denial. But as we have noted, on a motion for qualified immunity we consider whether plaintiff's allegations, if true, state a claim of deprivation. Wilson, 526 U.S. 603, 609. To decide if qualified immunity should be granted we ask only, if viewed

in the light most favorable to Delaney, was a deprivation alleged? Thus, we consider whether it was possible that serious injuries were sustained, not whether it was probable. See Antonelli, 81 F.3d 1422, 1432 (viable Eighth Amendment claim for denial of exercise where inmate alleged "health and physical well being have deteriorated").

Moreover, while we have not waived the injury requirement for claims involving the denial of exercise, but see Lopez v. Smith, 203 F.3d 1122, 1133 f.15 (9th Cir. 2000) (where inmate alleges long-term denial of exercise--in excess of 6 weeks--no showing of adverse medical effects required), we have acknowledged the strong likelihood of psychological injury when segregated prisoners are denied all access to exercise for more than 90 days. Davenport v. DeRobertis, 844 F.2d 1310, 1313 ("[T]he record shows, what anyway seems pretty obvious, that isolating a human being from other human beings year after year or even month after month can cause substantial psychological damage . . . ."). We have also noted, in conditions-of-confinement cases, that there may be some interplay between the severity of the deprivation alleged and the required showing of injury. Dixon v. Godinez, 114 F.3d 640, 643 (given severity and duration of prison condition,"[c]old temperatures need not imminently threaten inmates' health to violate the Eighth Amendment"); Del Raine v. Williford, 32 F.3d 1024, 1035 (7th Cir. 1994) (need not allege frostbite or hypothermia to establish that cold temperatures endangered inmate's health).

The defendants also are wrong in concluding that only a showing of physical injury can satisfy an Eighth Amendment claim. See Hudson, 503 U.S. 1, 16 (Blackmun, J., concurring) ("It is not hard to imagine inflictions of psychologial harm--without corresponding physical harm--that might prove to be cruel and unusual punishment."). Here, Delaney alleges both physical and mental injuries including migraines, heartburn, stomach cramps, neck pains, constipation, lethargy, and depression. It is possible that his mental injuries, along with the attendant physical symptoms, were sufficiently severe. He was given medications and taken to the health unit twice, and he repeatedly requested

additional treatment. Thus, Delaney has alleged an injury from an objectively serious deprivation.

We now turn to the subjective prong of this claim, the element of deliberate indifference. Wilson v. Seiter, 501 U.S. 294, 303 (1991). "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 842 (1994). Moreover, in determining whether prison officials had knowledge of the potential harm, we consider whether "the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it . . . ." Id.

Delaney argues that these defendants were subjectively aware that denying prisoners access to all out-of-cell exercise for more than 90 days posed a substantial risk of serious harm. In 1988 we upheld an injunction requiring prison officials (at Stateville) to provide 5 hours of exercise per week to prisoners in segregation for more than 90 days. Davenport, 844 F.2d 1310, 1314. We noted that at trial the medical director of the Illinois Department of Corrections testified to the "serious adverse effects on the physical and mental health" of segregated inmates who were denied access to exercise. Id. at 1313. The risk identified in Davenport was acknowledged in the institutional directive requiring 5 hours of exercise per week for segregated inmates.

Also, the defendants argue that they were unaware that the denial of exercise posed a significant risk to Delaney. However, it is enough that Delaney alleges that they acted with deliberate indifference towards all members of a class of which he is a part, rather than having to allege that they acted with particularized malice towards him. See Crawford-El, 523 U.S. 574, 592 ("When intent is an element of a constitutional violation . . . the primary focus is not on any possible animus directed at the plaintiff; rather, it is more specific, such as an intent to disadvantage all

members of a class that includes the plaintiff . . . ."). Deliberate indifference is akin to criminal recklessness; thus, it is enough that defendants are aware that their action may cause injury without being able to divine the most likely victim. Farmer, 511 U.S. at 843 ("Nor may a prison official escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner . . . .").

Here, Delaney alleges that he repeatedly complained to each of the named defendants, filed a grievance, and requested medical attention frequently because he could not exercise outside his cell. In spite of these repeated requests and their knowledge of the potential risk, Delaney claims the defendants did nothing. This inaction satisfies the subjective element of an Eighth Amendment claim. See Jackson, 955 F.2d 21, 22 (inmate's allegation that prison officers knew of unconstitutional conditions but did nothing was sufficient to show "deliberate indifference").

Having found that Delaney has alleged a constitutional violation, we consider whether the right he asserts was clearly established prior to the spring of 1996. "'[C]learly established' for purposes of qualified immunity means that '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Wilson v. Layne, 526 U.S. 603, 614-15 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)); Lanigan v. Village of East Hazel Crest, 110 F.3d 467, 472 (7th Cir. 1997). "[T]he inquiry focuses on the objective legal reasonableness of the action, not the state of mind or good faith of the officials in question." Levenstein v. Salafsky, 164 F.3d 345, 350 (7th Cir. 1998) (quoting Erwin v. Daley, 92 F.3d 521, 525 (7th Cir. 1996)).

While the right must be defined at the appropriate level of specificity, it is not to say "that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . . "

Wilson, 526 U.S. at 615. Rather, it is enough if, based on the pre-existing law, the unlawfulness of the conduct is apparent. Id.

As early as 1986--10 years before this lockdown was instituted--we held that a lack of exercise could rise to a constitutional violation. French, 777 F.2d 1250, 1255. Then in 1988 we decided Davenport v. DeRobertis, 844 F.2d 1310, arising from this same segregation unit. We upheld the district court's injunction requiring Stateville officials to provide segregated inmates "with at least five hours of exercise time per week in order to comply with the Eighth Amendment." Id. at 1315. We based our decision in part on the impressive number of cases from our sister circuits which held that failure to provide inmates with the opportunity for at least 5 hours of exercise a week outside the cell raised serious constitutional questions. Id. A year before this lockdown was instituted, we again noted that "[t]o deny a prisoner all opportunity for exercise outside his cell would, the cases suggest, violate the Eighth Amendment unless the prisoner posed an acute security risk if allowed out of his cell for even a short time." Anderson v. Romero, 72 F.3d 518, 527 (7th Cir. 1995). Thus, years before the lockdown at issue here was instituted, the case law clearly established that extended denials of exercise privileges raised constitutional concerns./2 In light of Davenport and Anderson, it was objectively unreasonable for prison offi cials to institute a complete 6-month denial of all out-of-cell exercise privileges for segregated prisoners.

Finally, we note that it may very well be that the defendant guards have no liability here because they did not establish the lockdown. If they had no discretion, then it would appear that only Warden DeTella is a proper defendant. But we can't say that now on this record, for the defendants have made no effort to, for instance, outline the chain of command--with responsibilities-- assigned to each. On this record, Judge Coar was right to deny the qualified immunity plea of all defendants. While all of these defendants may have other defenses available to them, at this stage of the case the order denying them an early exit on qualified immunity grounds

is AFFIRMED and the case REMANDED for
further proceedings.

FOOTNOTES

/1 The Stateville Institutional Directive
05.04.000K3 at II.C.9 provides:

Inmates who have been housed in segregation less
than 90 days will be afforded a minimum of one
hour of recreational activity outside their cells
per week. Recreational activity will be noted in
a log. Five hours of recreational yard time shall
be available to all inmates who have served a
minimum of 90 days in segregation status in
compliance with the Davenport Consent Decree.

/2 To support its argument that the pre-1996 case
law on the denial of exercise was unclear, the
defendants cite two cases outside this circuit.
Strickler v. Waters, 989 F.2d 1375, 1380 (4th
Cir. 1993) (6 months without outdoor exercise did
not constitute a constitutional violation where
inmates had access to day room for indoor exer-
cise during waking hours), and Wishon v. Gammon,
978 F.2d 446, 449 (8th Cir. 1992) (limiting out-
of-cell exercise to 45 minutes once a week did
not violate the Eighth Amendment rights where
inmate was confined to protective custody for his
own safety). Both cases are easily distinguish-
able. Neither case involved a complete denial of
all out-of-cell exercise or recreational options.