**Bennie CUNNINGHAM,
Plaintiff–Appellant,**

v.

**Stephen EYMAN, et al., Defendants–
Appellees.**

**No. 00–2648.**

United States Court of Appeals,
Seventh Circuit.

Submitted Aug. 17, 2001.*

Decided Aug. 17, 2001.

---

\* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Federal Rule of Appellate Procedure 34(a)(2).

Before MANION, ROVNER, EVANS, Circuit Judges.

## ORDER

Illinois inmate Bennie Cunningham appeals the district court's dismissal of his civil rights complaint brought under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Cunningham alleges that various correctional officers and United States Marshals violated his Eighth Amendment rights by refusing to remove his hand and ankle restraints, forcing him to urinate and defecate on himself. The district concluded that his claims were barred by *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), which hold that if a judgment in favor of the plaintiff would necessarily imply the invalidity of a conviction or sentence, a civil rights complaint must be dismissed unless the conviction or sentence has already been invalidated on collateral attack. We affirm the judgment of the district court on alternative grounds.

## Background

### A. Facts

In August 1993 Cunningham and two other prisoners were scheduled to testify at a fellow inmate's civil rights trial. On August 9, state correctional officers Stephen Eyman, John Curry, Brian Williams and Stephen Schneider transported Cunningham and the other two inmates from their cells in Stateville Correctional Center in Joliet, Illinois, to the Dirksen Federal Building in Chicago. Cunningham wore a yellow jumpsuit that zipped up to his neck and was restrained by handcuffs and ankle shackles. After their arrival at the Dirksen Building, the state correctional officers placed the prisoners into the custody of

United States Marshals Marguerite Gabele, John O'Malley, Thomas Burke and Kevin O'Malley. The marshals put the prisoners into a holding cell and gave them bag lunches. Cunningham requested a different meal because he did not eat milk or meat, but the marshals and state correctional officers denied his request. Incensed, Cunningham began yelling; the other two prisoners kicked the metal partition that divided the cell and the toilet. The state correctional officers transported the three inmates back to Stateville later that afternoon.

The next morning the state correctional officers took the inmates back to the Dirksen Building and again placed them in a lock-up cell. Gabele ordered the inmates to be kept in handcuffs and shackles due to their behavior on the previous day. At around 11:00 a.m., Cunningham asked the defendants to remove his shackles so that he could use the toilet. After the defendants denied his request, Cunningham urinated and defecated on himself and kicked the divider. According to Cunningham, John O'Malley and Schneider uttered derogatory remarks and racial slurs when they discovered that Cunningham had soiled himself. The state correctional officers did not offer lunch to the three inmates until their return to Stateville at approximately 3:00 p.m.

After Cunningham returned to Stateville, the prison initiated disciplinary charges against him for his conduct in the holding cell. The prison's Adjustment Committee found Cunningham guilty of creating a dangerous disturbance, damaging property, and creating a health hazard, and demoted him to "C" grade status for three months.

### B. Proceedings Before the District Court

On May 15, 1995, Cunningham brought this action pro se against the state correc-

tional officers and unnamed marshals under § 1983 and *Bivens*. Cunningham asserted three constitutional violations: (1) the defendants violated his Eighth Amendment rights by refusing to remove his restraints, forcing him to soil his clothing; (2) the defendants violated his Eighth Amendment rights by depriving him of food; and (3) the state correctional officers violated his Fourteenth Amendment right to procedural due process by failing to provide him with a fair disciplinary proceeding. Cunningham also moved for leave to proceed in forma pauperis. In July 1995 the district court referred his complaint to a magistrate judge to recommend whether the prisoner should be allowed to proceed in forma pauperis under 28 U.S.C. § 1915. As part of this referral, the magistrate judge conducted a *Spears* hearing to allow Cunningham to clarify his claims. *See Hains v. Washington*, 131 F.3d 1248, 1249 (7th Cir.1997) (per curiam); *Spears v. McCotter*, 766 F.2d 179 (5th Cir.1985). The magistrate judge recommended that Cunningham be allowed to proceed only with his Eighth Amendment claims relating to the defendants' failure to remove his restraints. The district court adopted the magistrate judge's report and recommendation over Cunningham's objections.

On March 4, 1996, the district court ordered the state correctional officers to waive service of process under Federal Rule of Civil Procedure 4(d). Eyman, Curry and Schneider waived service, but Williams, who was no longer employed by the Illinois Department of Corrections, did not. On April 3, 1996, the district court granted Cunningham's request to appoint counsel. Cunningham then filed three amended complaints adding and dropping various defendants. Cunningham's third (and final) amended complaint identifies the previously unnamed marshal defen-

dants as Gabele, John O'Malley, Burke and Kevin O'Malley.

On April 22, 1999, the district court allowed Cunningham's attorney to withdraw and denied Cunningham's motion to appoint new counsel. On July 12, 1999, Cunningham, acting pro se, moved the district court to clarify the status and whereabouts of Williams. On July 27, 1999, he moved for a default judgment against Williams. On August 19, 1999, the district court denied Cunningham's request for a default judgment but ordered counsel for the state correctional officers to determine whether Williams could be located. Counsel later advised the court that Williams was no longer employed with the Illinois Department of Corrections and that counsel could not find him.

At the close of discovery, the state correctional officers and marshals each moved for summary judgment. While these motions were pending, the district court sua sponte ordered the parties to brief whether the case should be dismissed under *Heck*. The parties submitted briefs, and on June 12, 2000, the district court dismissed Cunningham's suit under *Heck* and *Edwards*, concluding that his claims implicitly challenged his state disciplinary convictions. The district court also denied the defendants' summary judgment motions as moot.

### Analysis

On appeal Cunningham challenges the district court's dismissal of his Eighth Amendment claims relating to the defendants' failure to remove his restraints and his procedural due process claims. He also contends that the district court erred by denying his motion for default judgment against Williams.

■■■■ Cunningham argues, and the defendants concede, that the district court erred by dismissing his Eighth Amendment claims under *Heck* and *Edwards*. In

*DeWalt v. Carter*, 224 F.3d 607, 617–18 (7th Cir.2000), decided after the district court's order in this case, we held that a prisoner may challenge a prison disciplinary proceeding under § 1983 provided the punishment he received did not affect the length of his incarceration. Here, the prison's Adjustment Committee demoted Cunningham to "C" grade status, which eliminated his entitlement to certain institutional privileges, *see* 20 Ill. Admin. Code § 504.130, but did not affect the duration of his confinement.

■■■■ Though the basis for the court's judgment was incorrect in light of our subsequent holding in *DeWalt*, we may affirm its judgment on any ground supported by the record and by law. *See Bay v. Cassens Transp. Co.*, 212 F.3d 969, 972–73 (7th Cir.2000). Cunningham claims that the defendants subjected him to cruel and unusual conditions of confinement by keeping him in shackles, forcing him to soil himself, and verbally taunting him. To succeed on a claim that his conditions of confinement violated the Eighth Amendment, Cunningham must establish both prongs of a two-prong test. To satisfy the first prong, the objective component, Cunningham must demonstrate that he suffered a sufficiently serious deprivation. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Delaney v. DeTella*, No. 00–4145, 256 F.3d 679, 682–83 (7th Cir.2001). To demonstrate the second, subjective prong, Cunningham must show that the defendants acted with a culpable state of mind-one of deliberate indifference to a substantial risk of serious harm. *See id.*

■■■■ Cunningham has failed to establish that he suffered a sufficiently serious constitutional deprivation, which must be "extreme" to be actionable. *See Delaney*, 256 F.3d at 682–83. Cunningham has an Eighth Amendment right to "adequate food, clothing, shelter, and medical care,"

see *Farmer*, 511 U.S. at 832, but the Constitution does not require that prisoners be comfortable, see *Delaney*, 256 F.3d at 682–83. Conditions of confinement that do not fall below contemporary standards of decency are constitutional. *Thomas v. Ramos*, 130 F.3d 754, 763 (7th Cir.1997). Cunningham spent 16 hours in shackles and four to five hours in soiled clothing. Though certainly unpleasant, these hardships were temporary and as this court's case law makes clear, they were not of sufficient severity to implicate the Eighth Amendment. *See Key v. McKinney*, 176 F.3d 1083, 1086 (8th Cir.1999) (prisoner who was restrained in handcuffs and shackles for 24 hours, making it more difficult for him to relieve himself, did not suffer a constitutional violation); *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir.1997) (duration of deprivation must be considered in determining whether condition of confinement is unconstitutional); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (same); *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir.1988) (temporary neglect of prisoner's hygienic needs is insufficient to establish an Eighth Amendment violation). Similarly, though the officers' alleged use of racially derogatory language, if true, is reprehensible, it does not violate the Constitution. *See DeWalt*, 224 F.3d at 612. Because Cunningham does not assert facts demonstrating that he suffered a deprivation of constitutional proportions, we need not consider whether the defendants acted with a culpable mental state, *i.e.*, whether they acted with deliberate indifference to a known risk to his health or safety.

■ Cunningham next contends that the district court erred by dismissing his claim that the prison's Adjustment Committee failed to give him a fair hearing before demoting him to "C" grade status for three months. Prisoners are not entitled to procedural due process safeguards unless they can establish the deprivation of a constitutionally protected interest in life, liberty or property. *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir.1995) (per curiam). Under *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), Cunningham is required to demonstrate that his punishment resulted in atypical and significant hardship in relation to the ordinary incidents of prison life. Cunningham, however, does not have a protectible liberty interest in the loss of institutional privileges that resulted from his demotion to "C" grade status. *See Thomas*, 130 F.3d at 762 n. 8; *Whitford v. Boglino*, 63 F.3d 527, 533 n. 7 (7th Cir. 1995).

■ Finally, Cunningham argues that the district court erred by denying his motion for a default judgment against Williams. The district court, however, could not have done so because it did not have personal jurisdiction over Williams, who was never served, did not waive service, and did not appear before the court in any fashion. *See Cent. Laborers' Pension, Welfare & Annuity Funds v. Griffee*, 198 F.3d 642, 644 (7th Cir.1999).

The judgment of the district court is AFFIRMED.