In the

# United States Court of Appeals

### For the Seventh Circuit

No. 01-3413

ROLAND TURNER,

*Plaintiff-Appellant,*

*v.*

LOUIS MILLER, JEROME NICKERSON,
and PAUL MORGAN,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 3178—**William J. Hibbler**, *Judge.*

ARGUED MAY 22, 2002—DECIDED AUGUST 21, 2002

Before POSNER, KANNE, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.*   Roland Turner sued several
State of Illinois prison officials to recover for injuries he
allegedly sustained when he was shocked by exposed
electrical wires in the showers at Stateville Correctional
Center. In Count I, Turner alleged that the defendants
violated his Eighth Amendment right to be free from
cruel and unusual punishment by exposing him to un-
safe conditions of confinement. In Count II, he alleged
that the defendants were negligent under state law. After
a four-day trial, a jury returned a verdict in favor of the
defendants.

## I. Background

Turner, a prisoner at Stateville Correctional Center, alleges that on October 25, 1997, he was shocked when he came into contact with exposed wires dangling from a missing light fixture in the showers. Turner claims that when he raised his arm to allow another inmate to step in front of him to use a showerhead, his wrist touched the exposed wires and he was shocked. According to Turner, he then fell to the ground, resulting in injuries to his hands, back, and head.

At trial, Turner and several inmates testified on Turner's behalf. Turner explained that because so few shower-heads were working, he shared a showerhead with fellow inmate Flaviano DeLaola. Turner alleged that after he rinsed off, he stepped back to allow DeLaola to use the showerhead. At this point, Turner claimed that he raised his arm, and the next thing he remembered was being awakened with smelling salts. However, DeLaola testified at trial that he was a couple of showerheads away from Turner at the time of the incident, and thus, did not share the showerhead with Turner. Further, although several inmates claimed to have heard Turner yell out and seen him fall to the floor, no one actually saw Turner's arm hit any exposed wires.

Turner and the inmates provided conflicting testimony about the time frame during which the exposed wires in the showers existed and about the length of the exposed wires. One inmate testified that the wires had been hanging since 1994, while another inmate testified that the first time he saw the wires was on the day that Turner was shocked. Further, while Turner testified that the wires dangled between twelve and thirteen inches, another inmate specifically testified that two exposed wires were only seven and ten inches long respectively, and yet another inmate testified that the wires were two feet

long. Turner and all the inmates admitted that they had never filed a written grievance about the exposed wires.

At trial, the defendants denied all allegations against them and asserted sovereign immunity as an affirmative defense to Turner's negligence claim. Further, each defendant testified that he had no knowledge about the exposed wires in the showers and that he had never seen any wires dangling in the showers. Defendant Louis Miller, assistant Chief Inspector, testified that his responsibilities did not include inspecting the showers, and therefore, he would not have had an opportunity to notice any exposed wires. Rather, Miller explained that he was alerted to necessary repair work through work orders submitted to the engineering office, and no work order for exposed wires in the showers was ever submitted. Defendant Lieutenant Paul Morgan testified that on ninety-five percent of the days that he worked, he inspected the showers for contraband and that he had never seen any exposed wires in the showers nor had any inmate or guard ever told him that there were exposed wires in the showers. Defendant Sergeant Jerome Nickerson testified that he walked through the showers once every two or three weeks to check for cleanliness and that he never saw any exposed wires. Additionally, Nickerson testified that no inmate ever reported exposed wires to him.

The prison medical technician, John Adams, also testified on behalf of the defendants. Adams explained that when he arrived at the showers, he used an ammonia inhalant to revive Turner. Adams stated that although someone who was unconscious would normally be groggy upon revival, Turner "snapped around" immediately after being given the ammonia inhalant. Further, Adams testified that the inmates in the shower were disinterested in what was happening with Turner. Adams explained that this behavior was unusual because normally when a

fellow inmate was injured, the other inmates were very interested in seeing that the injured inmate received medical attention immediately. Adams also explained that Turner had no visible wounds or injuries. Dr. Smith, the Stateville medical director who subsequently treated Turner, also testified that if Turner had lost consciousness and fallen, he would have had bruising as well as swelling. However, according to Dr. Smith, Turner had no such injuries.

The jury returned a verdict on the negligence count in favor of the defendants, and thereafter the district court entered judgment in favor of the defendants and against Turner. Subsequently, Turner filed post-trial motions pursuant to Rules 50 and 59, arguing that reversal was warranted because the verdict was against the manifest weight of the evidence or, alternatively, that a new trial was warranted due to a lack of evidence, errors in the jury instructions, and an incomplete impeachment of him by defense counsel. The district court denied Turner's post-trial motions, and Turner now appeals.

## II. Analysis

We review the district court's denial of Turner's motion for judgment as a matter of law *de novo*, limiting our inquiry "to whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed." *Goodwin v. MTD Prods., Inc.*, 232 F.3d 600, 605-06 (7th Cir. 2000) (quotations omitted). We reverse only if we conclude that no rational juror could have found for the prevailing party. *See id.* at 606. We review the district court's denial of Turner's motion for a new trial for an abuse of discretion. *See id.*

With respect to Turner's state law negligence claim, the defendants persuade us that the district court lacked

subject-matter jurisdiction over this claim. Where a charged act of negligence "arose out of the State employee's breach of a duty that is imposed on him *solely* by virtue of his State employment, sovereign immunity will bar maintenance of the action" in any court other than the Illinois Court of Claims. *Currie v. Lao*, 592 N.E.2d 977, 980 (Ill. 1992) (emphasis in original); *see also* 705 ILCS 505/8(d) (1998) (waiving Eleventh Amendment immunity only in the Illinois Court of Claims).

In *Healy v. Vaupel*, 549 N.E.2d 1240, 1248-51 (Ill. 1990), the Illinois Supreme Court explained that the Illinois Court of Claims had exclusive jurisdiction over a student's claim that university employees' negligent performance of their duties led to personal injuries she sustained while participating in university gymnastic activities. That court emphasized that "[t]he relationship between the plaintiff and the defendants would not have had a source outside the employment status of the defendants." *Id.* at 1249. Six years later, in *Magdziak v. Byrd*, 96 F.3d 1045, 1049 (7th Cir. 1996), we found that a state police officer who killed a third party during a high speed chase was performing a function that arose solely as a result of that officer's state employment. Thus, we explained that the Illinois Court of Claims had exclusive jurisdiction over the resulting tort claims. *See id.* Similarly, we find today that the relationship between Turner and the defendants would not have had a source outside the employment status of the defendants, and whatever duty was owed by the defendants to Turner existed because of Turner's status as a prisoner and his presence at Stateville Correctional Center. *See Healy*, 549 N.E.2d at 1249; *see also Witt v. Corr. Officer Andrew*, 2000 WL 1349246, at *3 (N.D. Ill. Sept. 19, 2000) ("The court cannot imagine any set of conceivable facts where [the prison official's] negligent discharge of his shotgun while he was on duty as an armed guard in the prison could

be considered outside the scope of the duties imposed upon him by his state employment."). Thus, we find that the district court improperly exercised subject-matter jurisdiction over Turner's state law negligence claim.

With regard to the matter over which jurisdiction exists—his Eighth Amendment claim—Turner contends that the district court erred in denying his motion for judgment as a matter of law or a new trial. Before considering the merits of this argument, we must address a procedural matter that became apparent on review of the trial record. The verdict form submitted to the jury by the court was three pages in length and divided into separate sections. One section dealt with the negligence claim, and a second section concerned the Eighth Amendment claim. The jury's verdict was returned only as to the negligence claim, and no verdict was returned with regard to the Eighth Amendment claim. The judgment on the verdict entered by the court simply stated "that judgment is entered in favor of the defendants and against plaintiff."

While the verdict returned concerned only the negligence claim directly, it is our view that it is reasonable to infer that the jury's verdict on that claim constitutes an adverse finding on Turner's Eighth Amendment claim. *See Klapmeier v. Telecheck Int'l, Inc.*, 482 F.2d 247, 256 (8th Cir. 1973) (affirming the trial court's use of a similar inference).* Despite lack of jurisdiction over the negligence claim, we believe such an inference is reasonable and appropriate because both claims rested on the same operative facts and because Turner needed to show more than negligence to find deliberate indifference, an essential element of the Eighth Amendment claim. *See Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996); *Lunsford v.*

---

* This was a view apparently shared by the district court and counsel in this case.

*Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994) (explaining that "[m]ere negligence does not satisfy the deliberate indifference standard").

We turn now to the merits of Turner's constitutional claim. The Eighth Amendment's prohibition against cruel and unusual punishment imposes upon prison officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). An Eighth Amendment conditions-of-confinement claim has two components—a subjective component and an objective component. *See Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001). We have previously held:

> To satisfy the objective component, the deprivation alleged must be, objectively, sufficiently serious. Therefore, extreme deprivations are required to make out a conditions-of-confinement claim. The subjective component relates to a defendant's state of mind and requires a showing of deliberate indifference. At a minimum . . . an inmate must allege *actual* knowledge of *impending* harm *easily* preventable. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm.

*Delaney*, 256 F.3d at 683 (internal citations and quotations omitted) (emphasis in original). With respect to the subjective prong—which requires a showing of deliberate indifference—the Supreme Court has explained that "an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. In making this determination, we may consider whether "the circumstances suggest that the [official] being sued had been

exposed to information concerning the risk and thus 'must have known' about it." *Id.*

In this case, ample evidence was presented to support the conclusion that the defendants were not negligent, let alone deliberately indifferent. Turner and each of the testifying inmates acknowledged that none of them had ever filed a written grievance regarding exposed wires in the showers. Moreover, each of the three defendants denied that they had ever personally seen any exposed wires in the showers or that anyone had ever told them about the wires. A rational juror easily could have concluded that Turner failed to prove not only negligence, but by inference deliberate indifference, on the part of the defendants because he failed to present any evidence suggesting that the defendants knew of the wires or that they had been exposed to information concerning a substantial risk of serious harm. *See id.* Thus, the district court properly denied Turner's motion for judgment as a matter of law or a new trial with respect to Turner's Eighth Amendment claim.

Moreover, the resolution of the claim of negligence (and by inference deliberate indifference) requires a credibility determination. The jury heard Turner and his fellow inmates give inconsistent testimony about the circumstances surrounding the incident and conflicting statements concerning the length of the wires and the time frame during which the wires were allegedly exposed. Also, Turner testified that he was shocked when he stepped aside to let DeLaola use a showerhead, yet DeLoala testified that he was several showerheads away from Turner at the time of the incident. Further, neither medical technician Adams nor Dr. Smith saw any visible bruising or lacerations on Turner's body. Because the jury clearly did not find Turner's story credible, our decision to decline to alter the judgment below is further supported. *See United States v. Henderson*, 58 F.3d 1145, 1148 (7th Cir. 1995) ("[Q]uestions of credibility are solely for the trier of

fact, so such arguments are wasted on an appellate court.") (quotations omitted).

Finally, Turner argues that he is entitled to a new trial because during his cross-examination, defense counsel failed to prove up an attempted impeachment of him. However, following the trial, Turner moved for a mistrial or to have a curative instruction given to the jury regarding defense counsel's failed prove up. Both parties concede that a curative instruction was given to the jury. We have held previously that absent an overwhelming probability that the jury will be unable to disregard inadmissible evidence and a strong likelihood of a devastating effect from the evidence, we will presume that a jury will follow a curative instruction. *See Raybestos Prods. v. Younger*, 54 F.3d 1234, 1239 (7th Cir. 1995). In the present case, Turner presents no basis to conclude that the curative instruction was inadequate or that a strong likelihood of a devastating effect exists. *See id.*

### III. Conclusion

For the foregoing reasons, it is ordered that the judgment of the district court is MODIFIED to provide as follows: "Judgment is entered in favor of the defendants Louis Miller, Jerome Nickerson, and Paul Morgan and against the plaintiff, Roland Turner, on plaintiff's Eighth Amendment claim." The judgment, as modified, is AFFIRMED. It is further ordered that plaintiff's state law negligence claim is DISMISSED for lack of subject-matter jurisdiction.

A true Copy:

      Teste:

                      _____
                      *Clerk of the United States Court of Appeals for the Seventh Circuit*