UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 14, 2005[*]
Decided November 15, 2005

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 03-3978

| | |
|---|---|
| RICHARD DODD, <br>     *Plaintiff-Appellant,* <br><br> v. <br><br> TIM CORBETT and MARTY <br> DEGEYTER, <br>     *Defendants-Appellees.* | Appeal from the United States District <br> Court for the Northern District of <br> Indiana, South Bend Division <br><br> No. 3:99-CV-621RM <br><br> Robert L. Miller, Jr., <br> *Chief Judge.* |

**O R D E R**

Indiana inmate Richard Dodd went to trial in this *pro se* lawsuit claiming under 42 U.S.C. § 1983 that two police officers violated his Fourth Amendment rights when, he says, they beat him unnecessarily and ordered a police dog to attack him without provocation during a 1997 arrest. A jury found for the defendants. We affirm.

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

Dodd became the subject of a three-hour manhunt after he shot a police officer during a botched commercial burglary. The defendants, Commander Tim Corbett and Officer Marty DeGeyter, admitted using a dog and significant physical force to subdue Dodd, so the focus of trial was the degree of force used and whether its application continued without justification after Dodd was firmly in custody. Dodd told the jury that he and an accomplice, Luke Lukasiak, broke into a gas station after drinking beer and smoking marijuana, then fled through heavy snow when a police officer confronted them. Dodd admitted that shots were fired and that, as a result, he was convicted of attempted murder of a police officer but denied that he was the shooter. He also explained that after the long chase his asthma was making breathing difficult and he wanted to surrender, so when the pursuing officers caught up with him and Lukasiak at a line of pine trees, he did as he was told and lay face down with his hands showing. Dodd insisted that he was too tired to resist, yet after he was handcuffed, he said, somebody grabbed his hair, yanked his head back, and blasted mace into his face. When he started to black out, Dodd said, "the kicking and the hitting started." He could not see who was responsible because of the mace but claimed that it was Corbett who kicked him in the ribs, punched him, and kneed him in the head. Someone then rolled him into a sitting position, continued Dodd, and on command a dog grabbed his leg and jerked it a couple times. An unknown officer then led him by the nape of his neck to the squad car and kneed him in the face a final time before taking him to the hospital where he was treated for asthma and what he was told were minor puncture wounds.

Commander Corbett and Officer DeGeyter offered a different account, principally while testifying as Dodd's witnesses. Corbett recalled chasing Dodd and Lukasiak to a line of snow-covered pines, which he feared was ideal for an ambush. He shined his flashlight into the trees, drew his weapon, and shouted for the pair to come out showing their hands. Dodd emerged with one hand raised but the other at mid-breast in an area where, Corbett said, a shoulder holster could have been concealed. Dodd at first did not lie face down on the ground as ordered, and when he finally did, he tucked one hand under his stomach and rolled to his side to look back at the officers. Because Corbett knew that the suspects had shot at a police officer earlier that evening and had evaded capture for over three hours, he believed Dodd was considering whether to run, fight, or draw a weapon. He wanted to see Dodd's hands because "the hands are what kills," and, said Corbett, when Dodd refused to bring both hands out, he had to use force. Corbett testified that he was out in the open with nothing to hide behind, so he approached Dodd and kicked him in his ribs. Instead of revealing his hands, though, Dodd tucked them underneath his body. Corbett ordered Dodd to stop resisting, placed his hands on Dodd's shoulders, then kneed him in his head as hard as he could six times. Corbett told the jury that he believed the situation justified using lethal force, but he chose instead to administer blows until Dodd brought his hands into view. Only 10 to 15 seconds passed from the time he first kicked Dodd until the handcuffs were

on, and after that, Corbett insisted, he had no further physical contact with Dodd. Corbett also maintained that he never saw Officer DeGeyter's dog bite Dodd after he was cuffed.

Officer DeGeyter, for his part, acknowledged that he ordered his dog to detain Dodd. DeGeyter testified that he responded to a "shots fired" radio dispatch, and when he arrived at the gas station, he was told by the officer at the scene that the business had been burglarized and that he had been shot. The officer further advised that the suspects had fled. DeGeyter and his dog tracked the suspects over several miles, and when they arrived at the tree line, Dodd and Lukasiak were already laying face down with their hands concealed beneath them. DeGeyter assisted with Lukasiak and then noticed that Dodd was still refusing to show his hands. He thus ordered his dog to "attach" to Dodd. The dog took hold of Dodd's lower calf in its jaws for less than five seconds, compelling Dodd to show his hands and allowing Commander Corbett to place handcuffs on him. DeGeyter testified that employing the dog to subdue Dodd was justified because an officer may use a dog to apprehend a suspect where the safety of officers is immediately threatened or where using a dog would lower the risk of serious injury to officers. He also maintained that his dog had no contact with Dodd after he was cuffed.

Dodd's remaining evidence did not undermine the defendants' testimony. Dodd called Officer Matthew Blank, who testified that he saw Commander Corbett strike Dodd several times while Dodd was hiding his hands. In addition, Blank said, he did not see a dog bite Dodd, and he saw no one hit or kick Dodd after he was handcuffed. Similarly, Lukasiak conceded that he did not see Corbett strike Dodd nor did he see a dog bite Dodd. Lukasiak maintained that he himself was sprayed with mace and bitten by a dog after he was handcuffed, but he said he could not see what happened to Dodd because his face was full of snow.

The defendants' case-in-chief consisted primarily of testimony from fellow officers Richard Croymans and Kevin Kelsheimer, who corroborated the defendants' statements that, prior to confronting Dodd and Lukasiak, they knew an officer had been shot. Croymans testified that he was the first officer to arrive at the gas station and that Dodd fired at him from inside, hitting his bulletproof vest. He returned fire, took cover, and radioed that shots were fired. He then saw Dodd and Lukasiak run from the building. Croymans followed until they reached an open field where, he said, he stopped and radioed that two male suspects had fled, providing a general description of each. Kelshiemer testified that he arrived at the station in response to Croymans's radio report of gunfire and immediately noticed a bullet hole in Croymans's uniform. Kelshiemer then radioed that an officer had been shot because, he explained, the field officers needed to know the suspects were dangerous.

Having lost at trial, Dodd raises several issues on appeal, but we need address only the two he preserved in the district court.  Arguments raised for the first time in this court are waived.  *See Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005).  At trial Dodd expressly agreed to try the issue of liability separate from damages, and he did not object to proceeding to trial in his yellow prison jumpsuit and leg shackles after he mistakenly sent his civilian clothes to the county jail instead of to the federal courthouse.  Thus Dodd cannot argue those issues now.  *See Provident Sav. Bank v. Popovich*, 71 F.3d 696, 699-700 (7th Cir. 1995) (explaining that *pro se* litigants are subject to same waiver rules as counseled parties).

As to the questions properly before us, we turn first to Dodd's argument that the district court erred in admitting the testimony of Croymans and Kelsheimer.  Dodd objected generally to Croymans's testimony but failed to object at all to Kelsheimer's, so we confine our review to Croymans's testimony.  *See Wilson v. Williams*, 182 F.3d 562, 568 (7th Cir. 1999) (en banc) (holding that lack of objection at trial precludes appellate review of allegedly misused evidence).  The decision to admit testimony must stand unless the district court abused its discretion, i.e., unless "no reasonable person could agree with the ruling."  *Mihailovich v. Laatsch*, 359 F.3d 892, 906 (7th Cir. 2004).

Dodd's argument that Croymans's testimony was intended only to inflame the jurors by reminding them that he shot at and hit an officer ignores the settled principle that whether an arresting officer used excessive force is determined by assessing the need for force in light of all the surrounding circumstances.  *See Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003).  Events leading up to the use of force are necessarily relevant because the actions of the police are to be judged from the perspective of a reasonable officer at the scene.  *Graham*, 490 U.S. at 396; *see, e.g., Abdullahi v. City of Madison*, 423 F.3d 763, 764-65, 768 (7th Cir. 2005); *Smith v. Ball State Univ.*, 295 F.3d 763, 766-67, 770-71 (7th Cir. 2002).  Relevant facts include (1) the severity of the suspected crime, (2) whether the suspect posed an immediate threat to officer safety, and (3) whether the suspect was actively resisting arrest.  *Graham*, 490 U.S. at 397; *Payne*, 337 F.3d at 778.  While Croymans's testimony touched on Dodd's arrest and ultimate convictions for burglary and attempted murder of a police officer (subjects that Dodd alluded to in his own opening statement and admitted on cross-examination), Croymans's testimony helped explain why Commander Corbett and Officer DeGeyter would have believed that Dodd might still be armed and dangerous and that they could take no chances until he was fully subdued.  Thus we cannot say that the decision to allow his testimony was an abuse of discretion.  *See Deering v. Reich*, 183 F.3d 645, 652 (7th Cir. 1999) (explaining that officer's knowledge of suspect's crime and perception of danger to himself and others is relevant to determining whether force was reasonable).

That leaves Dodd's principal argument: that the district court should have disregarded the jury's verdict and granted judgment for him as a matter of law because discrepancies among the witnesses prove that Commander Corbett and Officer DeGeyter gratuitously assaulted him after he was handcuffed.[1] We review de novo the court's decision to deny relief under Federal Rule of Civil Procedure 50, examining the record only to assure that the jury verdict is sufficiently supported by the evidence. *Gower v. Vercler*, 377 F.3d 661, 666 (7th Cir. 2004). We will not "substitute our own credibility determinations for that of the jury," *id.,* and will reverse the jury's verdict only if "no rational juror could have found for the prevailing party." *Turner v. Miller*, 301 F.3d 599, 602 (7th Cir. 2002).

Dodd correctly asserts that the evidence showed that various police officers arrived on the scene at different times and that the timeline established by the witnesses is not exact, but he offered only his own testimony to support his contention that he was beaten, bit, and maced after he was handcuffed. Likewise, Dodd offered only his own testimony to support his contention that he immediately complied with officers' commands to reveal his hands. The jury chose to believe the defendants' testimony that Dodd failed to comply with their demands and that Commander Corbett and Officer DeGeyter used no more force than necessary to effect Dodd's arrest. The jury was presented with a classic swearing match, and it was for the jury, not this court, to chose between the competing testimony. *See Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 581 (7th Cir. 2003).

AFFIRMED.

---

[1]Since the district court ruled on the merits of Dodd's Rule 50(b) motion despite the fact that Dodd failed to first raise a Rule 50(a) motion during trial, *see* Fed. R. Civ. P. 50, we also will set aside Dodd's procedural error to address the substance of his claim on appeal.