Cornelius R. MADDOX, Petitioner,

v.

Gerald BERGE, Jon E. Litscher, Randy Hepp, Peter Huibregtse, Capt Blackbourn, Ms. T. Hanson, Lt. Grondin, Linda Hoddy–Tripp, Tim Haines and Mr. & Mrs. Miles, Respondents.

No. 06–C–761–C.

United States District Court,
W.D. Wisconsin.

Feb. 8, 2007.

Corey F. Finkelmeyer, Assistant Attorney General, Madison, WI, for Respondents.

## OPINION AND ORDER

CRABB, District Judge.

This is a proposed civil action for monetary relief, brought under 42 U.S.C. § 1983. Petitioner, who is presently confined at the Green Bay Correction Institution in Green Bay, Wisconsin, asks for leave to proceed under the *in forma pauperis* statute, 28 U.S.C. § 1915. From the financial affidavit petitioner has given the court, I conclude that petitioner is unable to prepay the full fee for filing this lawsuit. Petitioner has made the initial partial payment required under § 1915(b)(1).

In addressing any pro se litigant's complaint, the court must read the allegations of the complaint generously. *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, if the litigant is a prisoner, the 1996 Prison Litiga-

tion Reform Act requires the court to deny leave to proceed if the prisoner has had three or more lawsuits or appeals dismissed for lack of legal merit (except under specific circumstances that do not exist here), or if the prisoner's complaint is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law cannot be sued for money damages. This court will not dismiss petitioner's case on its own motion for lack of administrative exhaustion, but if respondents believe that petitioner has not exhausted the remedies available to him as required by § 1997e(a), they may allege his lack of exhaustion as an affirmative defense and argue it on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). *Massey v. Helman,* 196 F.3d 727 (7th Cir. 1999); *see also Perez v. Wisconsin Dept. of Corrections,* 182 F.3d 532 (7th Cir.1999).

In his complaint, petitioner alleges the following facts.

## ALLEGATIONS OF FACT

Petitioner is an inmate at the Green Bay Correctional Institution in Green Bay, Wisconsin. At all material times, petitioner was a prisoner confined either at the Whiteville Correctional Facility in Whiteville, Tennessee or the Wisconsin Secure Program Facility in Boscobel, Wisconsin. At all relevant times, Gerald Berge was warden and Peter Huibregtse was deputy warden of the Wisconsin Secure Program Facility; Jon E. Litscher was secretary of the Department of Corrections; Randy Hepp was a Department of Corrections investigator; Capt. Blackbourn was a security captain at the Wisconsin Secure Program Facility; and Ms. T. Hanson, Lt. Grondin, Linda Hoddy–Tripp, Tim Haines and Mr. and Mrs. Miles served on the administrative confinement review commit-

tee at the Wisconsin Secure Program Facility.

On November 11, 1999, petitioner was confined as a Wisconsin state prisoner at the Whiteville Correctional Facility in Whiteville, Tennessee. At that time, a riot occurred at the facility. Petitioner was not a participant in the riot. Nevertheless, on December 20, 1999, he was issued a disciplinary report charging him with insurrection and theft incident to the alleged insurrection. The incident report did not include any information telling petitioner why he was believed to be a participant in the riot or identify any witnesses who might have implicated petitioner. This meant petitioner had to guess how to defend himself.

On December 22, 1999, petitioner attended a disciplinary hearing on the charges against him. He testified on his own behalf and contested the charges. Nevertheless, he was found guilty of both charges and sentenced to 60 days' disciplinary segregation. The hearing form petitioner received listed the reason for the disciplinary committee's decision as "Inmate has been advised that anything he says can and will be used against him in any outside agency" and the reason for the punishment imposed as "due to investigation." Petitioner's own testimony was not recorded on the form and the form did not list the evidence relied on in finding petitioner guilty. Respondent Hepp was the investigator responsible for investigating the riot. He made findings without any evidence that petitioner was one of the prisoners involved.

As a result of the finding of guilt on these disciplinary infractions, petitioner was designated for placement at the Wisconsin Secure Program Facility, then known as the Supermax Correctional Institution. He arrived at the institution on January 13, 2000. There, respondent Blackbourn recommended petitioner for administrative confinement status. Respondent Blackbourn was responsible for insuring that there was a legitimate basis for recommending an inmate's placement in administrative confinement. He knew there was no evidence to support the disciplinary charges against petitioner yet relied entirely on the disciplinary report to recommend petitioner for administrative confinement status. As a result of this recommendation, respondents Hanson, Grondin, Hoddy–Tripp, Haines and Mr. and Mrs. Miles placed petitioner on administrative confinement, knowing there was no basis for holding petitioner in that status. Respondents Huibregtse, Berge and Litscher upheld petitioner's placement, also knowing there was no basis for the decision.

Petitioner's placement at the Wisconsin Secure Program Facility was for an indefinite period. He remained there for more than 20 months before he was transferred to another institution. While he was in administrative confinement he could not participate in program assignments. He was required to leave open for inspection non-legal mail going out of the institution. His phone calls and visits were limited to a list of 12 people. He was not allowed to engage in activities with other prisoners or communicate with them. He was confined to his cell 23 hours a day. He was denied outside recreation and was deprived of magazines, newspapers and leisure television. He was exposed to 24–hour lighting in his cell and subjected to strip searches "almost any time he left his cell." He was provided no educational opportunities.

On July 12, 2001, another court in "an unrelated case" required former Whiteville Correctional Institution inmates to be released from administrative confinement at the Wisconsin Secure Program Facility. On that date, the disciplinary report was

expunged from petitioner's record and he was transferred from the facility.

## DISCUSSION

In his complaint, petitioner suggests that his action is brought for alleged "violations of his Eighth and Fourteenth Amendment rights." In that regard, I understand him to be contending that respondent Randy Hepp violated his Fourteenth Amendment right to procedural due process when he failed to undertake an adequate investigation of the charges brought against petitioner in late 1999 and found petitioner guilty of the charge of participating in a riot without evidence to support the finding. In addition, I understand petitioner to allege that the remaining respondents violated his procedural due process rights by assigning him to administrative confinement upon his arrival at the Wisconsin Secure Program Facility and upholding the placement decision on the basis of a finding of guilt on the disciplinary infraction that they knew to be meritless. Finally, I understand petitioner to allege that respondents Berge and Litscher violated his Eighth Amendment rights by subjecting him to the conditions of confinement in administrative segregation at the Wisconsin Secure Program Facility for twenty months beginning on January 13, 2000. In addition to these claims specified by petitioner, I have construed petitioner's complaint to include additional constitutional claims that will be discussed separately in this opinion and order.

### A. Procedural Due Process

■ At the outset, I note that many of petitioner's procedural due process claims must be dismissed because the statute of limitations has run on these claims. Although the basic rule is that a statute of limitations defense is an affirmative defense, the Court of Appeals for the Seventh Circuit has held that a court may raise an affirmative defense on its own if it is clear from the face of the complaint that

the defense applies. *United States v. Lewis,* 411 F.3d 838 (7th Cir.2005); *Gleash v. Yuswak,* 308 F.3d 758, 760–61 (7th Cir. 2002). That exception is present here, because petitioner's complaint plainly reveals that portions of all of his claims are untimely under the governing statutes of limitations.

■ Actions brought under 42 U.S.C. § 1983 are governed by the personal injury statute of limitations and tolling laws in the state where the alleged injury occurred. *Lewellen v. Morley,* 875 F.2d 118, 120 (7th Cir.1989); *see also Hardin v. Straub,* 490 U.S. 536, 539, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989); *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Petitioner alleges that he was denied procedural due process in connection with a disciplinary hearing held in late 1999 in Whiteville, Tennessee, for which he was found guilty in December of that year. In addition, he appears to allege that he was denied due process in connection with his transfer to the Wisconsin Secure Program Facility in January of 2000 and, possibly, that he was denied due process in connection with his retention in administrative confinement at the facility.

■ Tennessee's statute of limitations would apply to petitioner's claims that his 1999 disciplinary hearing in Tennessee was procedurally defective and that his transfer from Whiteville to the Wisconsin Secure Program Facility in January 2000 was accomplished without appropriate procedural safeguards. In Tennessee, the statute of limitations for claims brought under 42 U.S.C. § 1983 is one year. *Tenn.Code Ann.* § 28–3–104(a)(3); *Jackson v. Richards Medical Co.,* 961 F.2d 575, 578 (6th Cir.1992); *Sevier v. Turner,* 742 F.2d 262, 272 (6th Cir.1984). Furthermore, Tennessee law does not provide tolling for the period in which petitioner was a prisoner, *Bledsoe v. Stokes,* 60 Tenn. 312 (1872), or

because he might not have known the "specific type of legal claim he … ha[d]" or that "the injury constituted a breach of the appropriate legal standard." *Holland v. Dinwiddie,* 2006 WL 3783534, *5 (Tenn. Ct.App. Dec. 27, 2006) (citing *Roberts v. Bicknell,* 73 S.W.3d 106, 110 (Tenn.Ct.App. 2001)). Thus, even if petitioner was unaware at the time he was transferred to the Wisconsin Secure Program Facility that his transfer without some procedural protections might violate his Fourteenth Amendment due process rights, *see, e. g., Wilkinson v. Austin,* 545 U.S. 209, 223–224, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) (conditions of confinement in super maximum prison might be atypical and significant so as to implicate liberty interest requiring due process protections), his due process claims that arose out of his disciplinary hearing and transfer are barred by the statute of limitations.

■ With respect to petitioner's possible claim that his constitutional right to due process was violated when he was retained in administrative confinement at the Wisconsin Secure Program Facility for twenty months, I note at the outset that it is questionable whether petitioner has any kind of liberty interest in not being retained in administrative confinement so as to entitle him to due process protections. *Lagerstrom v. Kingston,* 463 F.3d 621, 623 (7th Cir.2006) ("[T]he liberty interest recognized in *Wilkinson* is derived from the drastic change in the conditions of confinement. That kind of change might not be present if, for example, the inmate was already confined to segregation."). Even if petitioner did possess a liberty interest relating to his continued confinement in administrative segregation, he is barred from raising the claim for the time beginning with his arrival at the Wisconsin Secure Program Facility on January 13, 2000 until six years before his complaint was submitted to this court for filing.

■ The limitations period for tort claims in Wisconsin is six years, *Wudtke v. Davel,* 128 F.3d 1057, 1061 (7th Cir.1997). Like Tennessee, Wisconsin does not toll its limitations period for the time in which a person is incarcerated. Wis. Stat. § 893.16. Thus, any procedural due process claim that might have accrued between January 13, 2000 and the date falling six years before the date petitioner filed his complaint in this court is time barred. Unfortunately, I cannot determine when petitioner's complaint was "filed" under the mail box rule, because it is not clear when petitioner turned his complaint over to prison officials for mailing. *Jones v. Bertrand,* 171 F.3d 499 (7th Cir.1999) (applying the "mail box" rule in *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) to habeas corpus actions for purpose of computing statute of limitations.) Petitioner's complaint is dated October 31, 2006, but the authorization for release of petitioner's trust fund account statement that arrived with petitioner's complaint is signed by petitioner and dated December 26, 2006. The court did not receive petitioner's complaint until December 28, 2006, suggesting that petitioner probably did not give it to prison officials for mailing earlier than December 26. If petitioner did not turn his complaint over for mailing until December 26, then his claims accruing between January 13, 2000, when he arrived at the Wisconsin Secure Program Facility, and December 26, 2000 are time barred.

In any event, I will stay a decision whether to allow petitioner to proceed *in forma pauperis* on a claim that he was denied procedural due process with respect to his retention in administrative confinement, because more information from petitioner relating to this claim is required.

In *Wilkinson,* 545 U.S. at 224, 125 S.Ct. 2384 (citing *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)), the Court recognized that "the requirements of due process are 'flexible and call for such procedural protections as the particular situation demands.'" Moreover, the Court noted that "informal, non-adversary procedures" such as those employed in *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), and *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), provide sufficient process in the context of transfer to a super-maximum security institution. The Court of Appeals for the Seventh Circuit has suggested that so long as a "prisoner [i]s given sufficient notice of the reasons for his transfer to afford meaningful opportunity to challenge his placement," his placement in such an institution will satisfy due process under *Wilkinson. Westefer v. Snyder,* 422 F.3d 570, 588 (7th Cir.2005). Presumably, whatever process might be due with respect to petitioner's retention at the Wisconsin Secure Prison Facility would be even less, and certainly no more than is described in Wis. Admin. Code § DOC 308.04.

Pursuant to § DOC 308.04(10),

an inmate's progress in administrative confinement shall be reviewed by the [Administrative Confinement Review Committee] at least every 6 months following [his placement in administrative confinement]. Monthly progress will be reviewed consistent with the segregation review process as outlined in s. DOC 303.70(12).

Further, pursuant to § DOC 308.04(11), if an inmate has been in administrative confinement for twelve months or longer, the warden and administrator must review the administrative confinement review committee's decision to continue the inmate in that status and affirm, reverse or remand the decision, and notify the inmate of the decision. The regulation provides that the inmate may challenge any procedural errors in the review process through the inmate complaint review system. If petitioner received meaningful periodic reviews as required under § DOC 308.04, he cannot succeed on a claim that he was denied due process in connection with his retention at the Wisconsin Secure Program Facility. *Lindell v. Frank,* 2006 WL 3300379, * 3–4 (W.D.Wis. Nov. 13, 2006).

Because it is not clear whether petitioner even intended to advance a procedural due process claim with respect to his retention at the Wisconsin Secure Program Facility between approximately December 26, 2000 and July 19, 2001, when he was released from the facility, I will allow him an opportunity to advise the court of his intentions. If petitioner advises the court that he wishes to prosecute his due process claim as limited by this order, he must allege expressly that the administrative confinement review committee did not conduct periodic reviews of his status as contemplated by Wisconsin's administrative code provisions or that the reviews he received were so deficient that they were not meaningful, and explain what part of the procedure was lacking and when the omitted or deficient procedure occurred.

### B. *Eighth Amendment*

#### 1. *Totality of conditions of confinement*

■ I turn then to petitioner's allegations concerning the conditions of his confinement in administrative segregation at the Wisconsin Secure Program Facility. In reviewing the allegations, the question to be considered is whether respondents denied petitioner "the minimal civilized measure of life's necessities," *Dixon v. Godinez,* 114 F.3d 640, 642 (7th Cir.1997) (citing *Farmer v. Brennan,* 511 U.S. 825, 833–34, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)), and, if so, whether they did so with

a culpable state of mind. *Farmer,* 511 U.S. at 847, 114 S.Ct. 1970. In particular, the Eighth Amendment prohibits conditions of confinement that "involve the wanton and unnecessary infliction of pain" or that are "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). However, conditions that create "temporary inconveniences and discomforts" or that make "confinement in such quarters unpleasant" are insufficient to state an Eighth Amendment claim. *Adams v. Pate,* 445 F.2d 105, 108–09 (7th Cir.1971).

■ Petitioner appears to allege that defendants Berge or Litscher or both subjected him to cruel and unusual punishment because they detained him in conditions of severe social isolation and sensory deprivation while he was confined at the Wisconsin Secure Program Facility. Most of the conditions petitioner lists (highly restricted non-face-to-face visits, no communication with other prisoners, nearly complete idleness in a cell that was constantly illuminated, no recreation and extremely limited out of cell time and no access to any meaningful programming) are similar to those that were the subject of a class action lawsuit in this court near the time of petitioner's confinement at the facility, *Jones 'El v. Berge,* 00–C–421–C. In *Jones 'El,* I granted the plaintiff class leave to proceed on a claim that the total combination of the conditions of confinement at the Secure Program Facility made out a possible claim of violation of the Eighth Amendment. In doing so, I relied on *Wilson v. Seiter,* 501 U.S. 294, 304, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), in which the Supreme Court recognized that although certain conditions standing alone might not raise a claim of a constitutional violation, a combination of conditions having a "mutually enforcing effect that produces the deprivation of a single identifiable human need such as food, warmth or

exercise—for example, a low cell temperature at night combined with a failure to issue blankets," might state a claim under the Eighth Amendment.

The objectionable physical conditions at issue in the totality claim in *Jones 'El* were as follows: (1) 24–hour lock down, except that some inmates were able to leave their cells for up to four hours a week to use an unheated or uncooled indoor recreation cell; (2) cells with a sliver of a window and a boxcar door that prevented inmates from seeing outside their cell; (3) extremely limited use of the telephone, family or personal visits by video screen only and visiting regulations so burdensome as to prevent many inmates from receiving visitors; (4) chronic sleep deprivation caused by 24–hour cell illumination and, for inmates choosing to block the light by covering their heads, being awakened hourly throughout the night by security staff; (5) use of a video camera rather than human interaction to monitor all inmate movement; and (6) extreme cell temperatures. Rather than analyzing these conditions separately to determine whether each made out an independent claim for a violation of the Eighth Amendment, I accepted the premise that even if one or more of the conditions did not make out a separate Eighth Amendment claim, the plaintiffs had alleged sufficient facts to suggest that the conditions combined to deprive them of the clearly identifiable and basic human needs of social interaction and sensory stimulation.

In this case, petitioner Maddox does not allege that he suffered physical complications from his exposure to the extreme conditions in administrative confinement at the facility, and he is not required to do so at this early stage of the proceedings. However, even if he could prove ultimately that he suffered mental decline as a result of the totality of his conditions and that

respondents Berge and Litscher were aware of and ignored his worsening mental condition, I cannot grant him leave to proceed on a claim that the totality of his conditions deprived him of the minimal civilized measure of life's necessities. This is because I held in *Scarver v. Litscher*, 371 F.Supp.2d 986 (W.D.Wis.2005), that defendants Berge and Litscher were entitled to qualified immunity with respect to a claim that they had subjected an inmate to conditions of confinement that resulted in social isolation and sensory deprivation in violation of the Eighth Amendment. Section 1915(e)(2)(iii) requires dismissal of any claim that "seeks monetary relief from a defendant who is immune from such relief." *Scarver* holds clearly that defendants Berge and Litscher are immune from petitioner's claim for monetary relief that is based on the totality of the conditions of his confinement in administrative confinement. Because the only form of relief that petitioner requests is monetary, I must deny his request for leave to proceed on his totality claim.

2. *Individual Eighth Amendment claims*

a. Out-of-cell exercise

 From his allegations that he was confined to his cell 23 hours a day and that he was denied "outside recreation," I understand petitioner to allege that he was denied out-of-cell exercise while he was confined in administrative confinement at the Wisconsin Secure Program Facility. An inmate must allege the existence of an objectively serious injury to which prison officials were deliberately indifferent to state a claim under the Eighth Amendment. *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir.2001). The Court of Appeals for the Seventh Circuit has stated that a denial of exercise may constitute an objectively serious injury when it is "extreme and prolonged" and "movement is denied to the point that the inmate's health is

threatened." *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir.1995) (citing *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir.1988)); *see also Anderson v. Romero*, 72 F.3d 518, 527–28 (7th Cir.1995); *French v. Owens*, 777 F.2d 1250, 1255–56 (7th Cir.1985). In *Delaney*, 256 F.3d at 683–84, the court of appeals found that a prisoner stated a constitutional violation after he was placed in a segregation unit for six months and denied any access to out-of-cell exercise during this time. *Id.* (noting that denial of exercise for shorter periods of time or where prisoner was able to engage in limited exercise would not rise to level of constitutional violation). Here, petitioner alleges that he was prevented from engaging in any out-of-cell recreation for a longer period of time than the prisoner in *Delaney*. (I note, however, that like petitioner's due process claim, his Eighth Amendment claim is barred by the statute of limitations with respect to his contention that he was exposed to unconstitutional conditions dating back more than six years before he filed his complaint in this court.) Although it is not clear whether petitioner was able to exercise within his cell, the facts alleged are sufficient to meet the objective standard necessary to state an Eighth Amendment claim.

 The next question is whether petitioner has alleged that any of the named respondents were deliberately indifferent to his conditions. In the context of a conditions of confinement claim, deliberate indifference is the equivalent of intentional or reckless conduct. *Jackson v. Illinois Medi–Car, Inc.*, 300 F.3d 760, 765 (7th Cir.2002). To state a claim, an inmate must allege, at a minimum, "actual knowledge of impending harm easily preventable." *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir.1992) (quoting *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir.1985)). "A failure of prison officials to act in such

circumstances suggests that the officials actually want the prisoner to suffer the harm." *Id.* I infer that, as warden of the facility and secretary of the Department of Corrections respectively, respondents Berge and Litscher were aware of the out-of-cell restrictions imposed on prisoners in administrative confinement at the facility and that they had the authority to change those conditions but refused to do so. This is sufficient to state a claim of deliberate indifference. At a later stage respondents may be able to demonstrate that there were legitimate penological reasons for justifying this restriction. *E.g., Delaney,* 256 F.3d at 684. However, at this point, petitioner will be granted leave to proceed on his claim that respondents Berge and Litscher violated his Eighth Amendment rights by preventing him from exercising outside of his cell.

b. 24–hour lighting

 Petitioner alleges that he was subjected to 24–hour illumination. Although he does not allege that he suffered any adverse effects as a result of the lighting, he is not required to allege more than is necessary to put respondents on notice of his claim. *Simpson v. Nickel,* 450 F.3d 303, 306 (7th Cir.2006). Moreover, although this court ruled in *King v. Frank,* 371 F.Supp.2d 977 (W.D.Wis.2005) that a 9–watt fluorescent light, even burning 24 hours a day, was not bright enough to violate the inmate's Eighth Amendment rights, petitioner was not a party to that action and may be able to prove facts concerning the wattage and effects of the lighting in his cell on his health sufficiently serious to rise to a constitutional violation. *Blonder–Tongue Lab., Inc. v. University of Illinois Found.,* 402 U.S. 313, 329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (explaining that due process prohibits barring a litigant who was not a party to a prior action from litigating the identical issue despite existing decisions on the issue that are contrary to the litigant's position). Therefore, petitioner will be granted leave to proceed *in forma pauperis* on a claim that from the time period dating no further back than six years from the date he filed his complaint in this court until the time of his release from the Wisconsin Secure Program Facility, his exposure to constant illumination violated his Eighth Amendment rights. Again, I will allow petitioner to proceed on this claim against respondents Berge and Litscher, who petitioner might be able to prove were aware of the harmful effects exposure to 24–hour lighting could have on inmates at the facility and who nevertheless turned a blind eye to a serious risk of harm.

c. Strip searches

 Petitioner alleges that during his confinement in administrative confinement, he was subjected to strip searches "almost any time he left his cell." Strip searches or invasive searches are not unconstitutional per se. *Fillmore v. Page,* 358 F.3d 496, 505 (7th Cir.2004). In light of the reduced privacy interests and paramount security concerns in the prison setting, "only those searches that are maliciously motivated, unrelated to institutional security, and hence totally without penological justification are considered unconstitutional." *Whitman v. Nesic,* 368 F.3d 931, 934 (7th Cir.2004) (citations and quotations omitted). To violate the Eighth Amendment, the search "must amount to calculated harassment unrelated to prison needs, with the intent to humiliate and inflict psychological pain." *Id.* (citations and quotations omitted); *see also Calhoun v. DeTella,* 319 F.3d 936, 939 (7th Cir.2003). Petitioner's allegation that he was subjected to a strip search almost every time he left his cell suggests that he may have been searched for reasons entirely related to security. However, it is inappropriate to assume

the existence of a legitimate reason for the searches at this stage of the proceedings. Petitioner will be granted leave to proceed on this claim against respondent Captain Blackbourn, who petitioner alleges was the security captain at the facility.

### d. Lack of educational or other programs

■ I understand petitioner to allege that while he was in administrative confinement, he was unable to take advantage of educational or rehabilitative program opportunities. The Court of Appeals for the Seventh Circuit has recognized a constitutional right to treatment for some institutionalized persons. *Nelson v. Heyne,* 491 F.2d 352 (7th Cir.1974) (holding that incarcerated juveniles have a constitutional right to rehabilitative treatment). However, the court has never extended the holding in *Nelson* to adult prison inmates, although at least one other court has suggested that the absence of programming could constitute an Eighth Amendment violation if the lack of treatment served to deny the inmate a minimal civilized measure of life's necessities. *Lewis v. Washington,* 197 F.R.D. 611, 615 (N.D.Ill.2000) (citing *Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). Assuming that there is some right to rehabilitative treatment, petitioner has nevertheless failed to state a claim. The court of appeals has held that a prisoner has no right to receive a particular rehabilitative program. *Higgason v. Farley,* 83 F.3d 807, 809 (7th Cir.1996), and petitioner's allegations do not permit a reasonable inference that the lack of educational or rehabilitative programming denied him the minimal civilized measure of life's necessities. Therefore, petitioner will be denied leave to proceed *in forma pauperis* on this claim.

### 3. *Additional constitutional claims*

Although petitioner does not identify the particular constitutional or federal right at stake with respect to his allegations that he was denied magazines, newspapers and leisure television and forced to permit inspection of his outgoing non-legal mail, I construe his complaint to include a claim that his First Amendment rights were violated by these conditions. In addition, I construe the complaint to allege that petitioner's inability to attend congregate religious services violated his rights under the Religious Land Use and Institutionalized Persons Act and the First Amendment.

### a. Magazines and newspapers

■ Petitioner's allegation that he was denied all access to magazines and newspapers is analyzed under the First Amendment's free speech clause. Prison actions that affect an inmate's receipt of non-legal mail must be "reasonably related to legitimate penological interests." *Thornburgh v. Abbott,* 490 U.S. 401, 409, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). In *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), the Supreme Court set out four factors to be used in determining the reasonableness of prison regulations. Those factors are: 1) whether a "valid, rational connection" exists between the regulation and a legitimate, neutral government interest; 2) the existence of alternative methods for the inmate to exercise his constitutional right; 3) the effect the inmate's assertion of that right will have on the operation of the prison; and 4) the absence of an alternative method to satisfy the government's legitimate interest. *Id.* at 89–90, 107 S.Ct. 2254. Thus, a prison policy limiting a prisoner's access to reading material will be held constitutional so long as it is an unexaggerated response to legitimate penological interests. *Beard v. Banks,* —— U.S. ——, ——, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (citing *Turner,* 482 U.S. at 87, 107 S.Ct. 2254).

In previous cases in this court, I determined that officials at the Wisconsin Secure Program Facility withheld publications from inmates in the lower levels of the facility's level system and offered them to inmates at higher levels, in an effort to induce rehabilitative behaviors from the inmates in the lower levels. Rehabilitation is a legitimate penological interest. However, petitioner does not allege that when he was denied newspapers and magazines because he was being held at the lower levels of the facility's level system. Thus, it would be inappropriate at this point to conclude that the decision to withhold newspapers and magazines from petitioner bears a reasonable relation to the facility's interest in rehabilitation without giving petitioner a chance to show the lack of a reasonable relationship. Therefore, petitioner will be allowed to proceed *in forma pauperis* on this claim. *E.g., Lindell v. Frank*, 377 F.3d 655, 657–58 (7th Cir.2004) (court erred in presuming existence of legitimate interest in prison security in denying inmate at Secure Program Facility leave to proceed on claim challenging facility's policy of limiting inmates' access to postcards). The grant of leave to proceed on this claim is against respondents Berge and Frank, who had authority to establish policies concerning the receipt of publications for inmates in administrative confinement.

### b. Leisure television

■ There is no constitutional right to watch television in prison. *Murphy v. Walker*, 51 F.3d 714, 718 n. 8 (7th Cir. 1995); *James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir.1992). Therefore, petitioner will not be allowed to proceed *in forma pauperis* in this case on a claim that the denial of leisure television violates his constitutional rights.

### c. Outgoing non-legal mail

■ Petitioner complains that prison staff required him to leave all of his outgoing nonlegal mail open to be inspected by prison officials. However, although the First Amendment protects inmates' outgoing mail from censorship, *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), and from unreasonable delays in mail delivery, *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir.1996), petitioner does not suggest that any of his outgoing mail was censored or delayed. The Federal Rules of Civil Procedure do not require petitioner to identify legal theories or plead facts satisfying all the elements of a claim, but he must at least give respondents notice of the nature of his claim. Without any allegation suggesting what might have been censored or delayed, if anything, respondents have no way of knowing how to respond to this claim. Moreover, petitioner does not identify any respondent that may have censored or delayed his mail. Therefore, petitioner's claim that respondents' handling of his outgoing mail violated his First Amendment rights will be denied for his failure to state a claim upon which relief may be granted.

### d. Religious freedom claims

The Religious Land Use and Institutionalized Persons Act prohibits governmental imposition of a "substantial burden on the religious exercise" of a prisoner, unless the respondents can show that the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1. The act defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5. Although the act

does not define the term "substantial burden," the court of appeals has held that a substantial burden under the act is "one that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise ... effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir.2003).

Moreover, like petitioners asserting claims under the Religious Land Use and Institutionalized Persons Act, those bringing free exercise claims under the Constitution must show that the exercise of their religion has been substantially burdened. *Hernandez v. Commissioner*, 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989). To ultimately succeed on a free exercise claim, the religious adherent must be able to prove that a governmental regulatory mechanism burdened the adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by the religion or by preventing him or her from engaging in conduct or having a religious experience which the faith mandates. *Id.; Graham v. Commissioner*, 822 F.2d 844, 850–51 (9th Cir.1987).

When a prison regulation impinges on an inmate's constitutional right to exercise religious freedom, the regulation must be reasonably related to a legitimate penological interest. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citing *Turner v. Safley*, 482 U.S. at 89, 107 S.Ct. 2254). As I paraphrased in discussing petitioner's claim that his First Amendment rights were violated by a policy forbidding him from possessing magazines and newspapers, the factors to be considered under the "reasonableness" standard are:

1. whether a valid, rational connection exists between the regulation and a legitimate government interest behind the rule;

2. whether there are alternative means of exercising the right in question that remain available to prisoners, for example, communal religious services broadcast to a prisoner's cell;

3. the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and

4. although the regulation need not satisfy a least restrictive alternative test, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable.

*Al–Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir.1991) (quoting *Williams v. Lane*, 851 F.2d 867, 877 (7th Cir.1988)) (additional quotation marks omitted).

In this case, petitioner has not identified his religion, explained whether he was able to join communal services broadcast via television to his cell, or alleged one fact suggesting how his inability to attend congregate religious services substantially burdened his religious exercise. Although it would be inappropriate to dismiss this claim because petitioner did not provide a complete description of the circumstances surrounding the decision to deny his attendance at congregate religious services, it would be a disservice to both petitioner and respondents to permit petitioner to proceed on a claim that would inevitably fail were more facts to be revealed. In *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir.2003), the court of appeals held that district courts may call on a petitioner to provide additional allegations in situations like this one, in which the facts alleged are so sparse that it is difficult to determine whether petitioner has a viable claim. Therefore, petitioner will be given an opportunity to file an addendum to his complaint that includes allegations on the following subjects:

(1) to what religion he belonged in 2000 and 2001;

(2) whether respondents made religious services available to petitioner by broadcast television; and

(3) the effect that denying him the ability to attend group religious services had on his ability to practice his religion, if any.

If petitioner does not file an addendum on this issue within the time allowed, I will assume that he does not wish to proceed with a claim that his right to practice his religion was violated under the First Amendment and RLUIPA.

## ORDER

IT IS ORDERED that petitioner Cornelius R. Maddox's request for leave to proceed *in forma pauperis* is

1. GRANTED with respect to his claims that, during the time period starting more than six years before he filed his complaint in this court until July 13, 2001,

a) respondents Gerald Berge and Jon E. Litscher violated petitioner's Eighth Amendment rights by failing to allow him out-of-cell recreation;

b) respondents Berge and Litscher violated petitioner's Eighth Amendment rights by subjecting him to 24-hour illumination in his cell;

c) respondent Captain Blackbourn subjected petitioner to unreasonable strip searches; and

d) respondents Berge and Litscher violated petitioner's First Amendment rights by depriving him of access to newspapers and magazines;

2. DENIED with respect to his claims that

a) respondents denied him procedural due process in violation of his Fourteenth Amendment rights in connection with his disciplinary hearing on December 22, 1999, his transfer to the Wisconsin Secure Program Facility on January 13, 2000 and his retention in administrative confinement between January 13, 2000 and approximately December 26, 2000;

b) respondents violated his Eighth Amendment rights by subjecting him to a combination of conditions of confinement that together deprived him of his basic human need for social interaction and sensory stimulation;

c) respondents violated his Eighth Amendment rights by denying him educational or rehabilitative programs;

d) respondents violated his constitutional rights by depriving him of leisure television; and

e) respondents violated his First Amendment rights by inspecting his outgoing non-legal mail.

3. STAYED with respect to petitioner's claims that

a) respondents Ms. T. Hanson, Lt. Grondin, Linda Hoddy–Tripp, Tim Haines and Mr. and Mrs. Miles, all members of the administrative confinement review committee, and respondents Huibregtse, Berge and Litscher, who reviewed decisions of the committee, deprived petitioner of his procedural due process rights in connection with petitioner's retention in administrative confinement status; and

b) respondents Berge and Litscher violated petitioner's rights under the Religious Land Use and Institutionalized Persons Act and the First Amendment free exercise clause when they refused to permit petitioner to attend congregate religious services.

Further, IT IS ORDERED that petitioner may have until February 20, 2007, in which to submit an addendum to his complaint in which he provides the following information:

a) a statement indicating whether he wishes to pursue a due process claim with respect to his retention in administrative confinement;

b) if petitioner indicates he does wish to proceed with his due process claim, he must also tell the court why he believes the administrative confinement review committee did not conduct periodic reviews of his status in administrative confinement as contemplated by Wisconsin's administrative code provisions, explain when the departure from the state required procedure occurred and what part of the procedure was not followed. If, by February 20, 2007, petitioner does not respond to this request for additional information on his due process claim, I consider the claim to have been withdrawn;

c) a statement identifying the religion to which he belonged in 2000 and 2001 as well as stating whether respondent Berge made religious services available to petitioner by broadcast television and what effect his inability to attend group religious services had on his ability to practice his religion, if any. If, by February 20, 2007, petitioner fails to supply the court with this information, I will assume that he does not wish to proceed with a claim that his right to practice his religion was violated under the First Amendment and RLUIPA.

5. Respondent Randy Hepp is DISMISSED from this action.

6. Copies of petitioner's complaint and this order will be sent to the Attorney General for service on the state respondents remaining in the lawsuit after this court determines whether petitioner may proceed *in forma pauperis* against respondents Peter Huibregtse, Ms. T. Hanson, Lt. Grondin, Linda Hoddy–Tripp, Tim Haines and Mr. and Mrs. Miles on his remaining potential due process claim.

7. For the remainder of this lawsuit, petitioner must send respondents a copy of every paper or document that he files with the court. Once petitioner has learned what lawyer will be representing respondents, he should serve the lawyer directly rather than respondents. The court will disregard any documents submitted by petitioner unless petitioner shows on the court's copy that he has sent a copy to respondent or to respondent's attorney.

8. Petitioner should keep a copy of all documents for his own files. If petitioner does not have access to a photocopy machine, he may send out identical handwritten or typed copies of his documents.

9. The unpaid balance of petitioner's filing fee is $302.85; petitioner is obligated to pay this amount in monthly payments as described in 28 U.S.C. § 1915(b)(2).