James J. KAUFMAN, Petitioner,

v.

Richard SCHNEITER (WSPF Warden); Peter Huibregtse (WSPF Deputy Warden); Randall Hepp (JCI Warden); Cari Taylor (JCI Deputy Warden); Cynthia Thorpe, Mary Miller and Ms. T. Gerber (WSPF Business Office), Respondents.

No. 07–C–45–C.

United States District Court, W.D. Wisconsin.

Feb. 15, 2007.

James J. Kaufman, Boscobel, WI, pro se.

Corey F. Finkelmeyer, Assistant Attorney General, Madison, WI, for Respondents.

## OPINION and ORDER

CRABB, District Judge.

In this civil action for declaratory and monetary relief under 42 U.S.C. § 1983, James Kaufman, a prisoner at the Wisconsin Secure Program Facility in Boscobel, Wisconsin, contends that his constitutional rights have been violated by respondent prison officials in myriad ways. Jurisdiction is present under 28 U.S.C. § 1331.

Petitioner requests leave to proceed *n forma pauperis* under 28 U.S.C. § 1915. From the financial affidavit and trust fund account statement petitioner has given the court, I conclude that he is unable to prepay any of the fees and costs of starting this lawsuit. Nevertheless, I must still screen his complaint and dismiss any claims in it that are legally frivolous, malicious, fail to state a claim upon which relief may be granted or seek money damages from a respondent who is immune from such relief. 28 U.S.C. § 1915A.

Petitioner will be granted leave to proceed on his claims that (1) respondent Hepp retaliated against him in violation of the First Amendment; (2) respondents Schneiter, Raemsich and Huibregtse vio-

lated his First Amendment rights by upholding a prison policy under which he is denied all publications; (3) respondents Taylor and Raemisch violated his rights under the First Amendment by not delivering his September 5, 2006 letter; (4) respondents Schneiter, Raemisch and Huibregtse violated his right to practice his atheist beliefs by preventing him from ordering publications about atheism in violation of the free exercise clause and RLUIPA; and (5) respondents Schneiter and Raemisch violated his rights under the Eighth Amendment by forcing him to choose between out-of-cell exercise and time spent in the prison law library.

However, petitioner will be denied leave to proceed on his claims that (6) respondent Huibregtse violated his right to practice his atheist beliefs by refusing to provide him with publications about atheism in violation of the free exercise clause and the Religious Land Use and Institutionalized Persons Act (RLUIPA); (7) respondents Taylor and Hepp violated his right to practice his atheist beliefs by refusing to approve a study group for inmates who designate themselves as atheists, humanists, freethinkers and "other" and inmates who have no religious preference, in violation of the free exercise clause and RLUIPA; (8) respondent Thorpe violated his Eighth Amendment right to medical care by denying him timely access to dental treatment; (9) unidentified prison officials violated his rights by retaining him in segregation for the full duration of his period of segregation; (10) respondents Huibregtse and Raemisch violated his right to equal protection by confining only prisoners who are not seriously mentally ill at the Wisconsin Secure Program Facility; (11) respondents Schneiter and Raemisch violated his right of access to the courts by failing to provide "Shepardizing" tools in the Wisconsin Secure Program Facility's law library; and (12) respondents Gerber and Hepp violated his right of access to

the courts by denying him postage for his administrative appeals.

From petitioner's complaint, supplemental complaint and the documents attached to each, I draw the following facts, construed liberally in petitioner's favor.

## FACTUAL ALLEGATIONS

### A. *Parties*

Petitioner James Kaufman is an inmate at the Wisconsin Secure Program Facility in Boscobel, Wisconsin. Before September 6, 2006, petitioner was incarcerated at the Jackson Correctional Institution in Jackson, Wisconsin.

Respondent Richard Schneiter is Warden of the Wisconsin Secure Program Facility.

Respondent Peter Huibregtse is Deputy Warden of the facility.

Respondent Randall Hepp is Warden of the Jackson Correctional Institution.

Respondent Cari Taylor is Deputy Warden of the Jackson Correctional Institution.

Respondent Cynthia Thorpe is Health Services Supervisor at the Wisconsin Secure Program Facility.

Respondent Ms. T. Gerber works in the Wisconsin Secure Program Facility's Business Office.

(Although named in the caption of the supplemental complaint, respondent Mary Miller is not identified.)

### B. *Transfer*

On April 14, 2006, petitioner filed a federal lawsuit, *Kaufman v. Frank*, Case No. 06–C–205–C, in which he named respondent Hepp as a defendant. Respondent Hepp was served with a copy of the complaint in that case on July 17, 2006.

On September 6, 2006, petitioner was notified that he would be transferred tem-

porarily to the Wisconsin Secure Program Facility, a supermaximum security prison. Petitioner had no history of disruptive or violent behavior and did not meet the standards for placement at the facility. Respondent Hepp transferred petitioner in retaliation for his filing Case No. 06-C-205-C.

Petitioner filed a complaint numbered W SPF–2006–27652 challenging his placement at the Wisconsin Secure Program Facility. The complaint was rejected on October 6, 2006.

### C. *Denial of Publications*

When petitioner arrived at the Wisconsin Secure Program Facility, he received a copy of the facility's inmate handbook, dated April 13, 2006. The facility utilizes a two-part behavioral system for inmates. One group of inmates, those in the High Risk Offender Program, is allowed to possess up to ten books and two periodicals in their cells at any given time. The second group of inmates, those in the "step system," is not allowed to possess any publications. Upon arrival at the facility, petitioner was placed in step 3 of the 3-step system.

Petitioner filed an inmate complaint numbered WSPF–2006–26695, challenging the policy of prohibiting all publications to step system inmates. On September 20, 2006, respondent Schneiter dismissed the complaint, stating, "Step inmates are not allowed publications while at WSPF." Petitioner appealed the dismissal. On October 2, 2006, respondent Raemisch denied the appeal.

Among the items petitioner was denied was a copy of the local rules for the United States District Court for the District of Columbia, where petitioner had a pending lawsuit. The bound rules booklet was considered to be a publication and was therefore denied. Petitioner filed an inmate complaint numbered WSPF–2006–31077 regarding the denial of the rules booklet. On November 3, 2006, respondent Huibregtse dismissed the complaint. Although petitioner filed an appeal, respondent Gerber twice refused to mail it, stating that challenges to denied publications did not meet the criteria for obtaining legal loan postage beyond the annual $200 maximum authorized by Wis. Admin. Code § DOC 309.51.

Petitioner was denied several other items on the ground that each was a publication. These included a packet of stapled sheets containing an address list (the subject of inmate complaint WSPF–2006–33818) and a retail catalogue (the subject of inmate complaint WSPF–2006–28156). In each case, petitioner's complaint was dismissed and he was refused postage to send his appeal on the ground that the challenge raised in his complaint did not meet the facility's criteria for obtaining a legal loan extension.

On September 5, 2006, the day before his transfer to the Wisconsin Secure Program Facility, petitioner received a letter from a person named Robert Bernard. Prison officials refused to deliver the letter. Petitioner filed an inmate complaint numbered JCI–2006–25838, challenging prison officials' failure to explain why they did not deliver the letter to him. Respondent Taylor dismissed the complaint, stating that there was no administrative law provision that required prison officials to explain why they did not deliver specific mail items. Petitioner filed an appeal, which respondent Raemsich denied.

### D. *Religion Claims*

#### 1. *Study group*

On March 31, 2006, petitioner submitted a request to officials at the Jackson Correctional Institution, requesting a "new religious practice": a study group for "inmates who are atheist, freethinkers, humanists, and who had selected 'other' or

'no preference' as their religious belief." Petitioner .worded his complaint broadly on purpose because the Wisconsin Department of Corrections Religious Preference Form does not give inmates the option of designating themselves as atheists, humanists, or otherwise non-theists. Petitioner's 18–page request included a list of community groups that prison officials could contact for additional information and a list of sample literature related to petitioner's request. Prison officials did not contact any of the persons listed on petitioner's list or read any of the materials he submitted.

Relying on the advice of Jackson Correctional Institution Chaplain Myron Olson, Program Director Danielle LaCost and New Lisbon Correctional Institution Warden Timothy Lundquist, respondent Taylor denied petitioner's request, finding that it was a request for a non-religious activity. Petitioner filed inmate complaint number WSPF–2006–34092, challenging the denial. On November 27, 2006, respondent Hepp dismissed the complaint. Petitioner was denied free postage to mail his appeal on the ground that the challenge raised in his complaint did not meet the facility's criteria for obtaining legal loan postage beyond the annual maximum.

2. *Materials on atheism*

When petitioner arrived at the Wisconsin Secure Program Facility, he noticed that the prison's library did not contain any books on atheism. Petitioner sent the prison chaplain several requests for atheist reading materials, but received no response. Petitioner filed an inmate complaint numbered WSPF–2006–31875, in which he reiterated his request for books about atheism. Inmate complaint examiner Ellen Ray recommended that the com-

plaint be dismissed for the following reason:

> The I[nmate] C[omplaint] E[xaminer] has spoken to Chaplain Overbo. He did contact the organization that inmate Kaufman suggested. However, the organization has not responded to the Chaplain. As such, dismissal is recommended.

Respondent Huibregtse dismissed the complaint on November 3, 2006. Petitioner tried to appeal, but was denied postage because his complaint did not meet the facility's criteria for obtaining a legal loan extension.

Petitioner filed a second complaint numbered WSPF–2006–35380. The inmate complaint examiner reported:

> In speaking with Chaplain Overbo, he states, "I gave Inmate Kaufman 9 pages of information on Atheism. This is all the information that was provided to me. There is nothing more that can be done." The I[nmate] C[omplaint] E[xaminer] finds this reasonable and dismissal of the complaint is recommended.

The complaint was dismissed on December 7, 2006. Petitioner was unable to obtain postage to appeal the dismissal.

Petitioner tried to file a third inmate complaint numbered WSPF–2006–36209. On December 22, 2006, respondent Huibregtse rejected that complaint, stating, "This issue was addressed in WSPF–2006–35380 and will not be revisited." [1]

The Wisconsin Secure Program Facility does not provide any publications about atheism and petitioner is not allowed to order any.

---

1. Petitioner alleges that respondent Huibregtse made the decision to reject his complaint. I note, however, that the rejection attached to petitioner's complaint is signed by Kelly Trumm, not respondent Huibregtse.

### E. Dental Care

Soon after arriving at the Wisconsin Secure Program Facility, petitioner began requesting dental care. One of his teeth was "cutting into his tongue," causing him constant pain and bleeding and making it difficult for him to eat. In response to petitioner's first health services request, prison medical staff told petitioner he had been placed on a dental waiting list. Health staff officials did not respond to any of petitioner's subsequent requests for treatment.

On January 11, 2007, after experiencing four months of constant pain, petitioner filed an inmate complaint numbered WSPF–2007–1201. On January 12, 2007, Cynthia Thorpe, the facility's health services supervisor dismissed the complaint, noting that the dental waiting list "is about a year" and that "while this is unfortunate, there is really nothing that can be done. Plaintiff was directed to contact the dentist if he 'beg[an] to experience extreme pain.' " Plaintiff had already done that, to no avail.

Plaintiff appealed the dismissal of his complaint. The appeal was denied on January 26, 2007. Petitioner filed a second grievance on the same subject, inmate complaint WSPF–2007–2062, but that complaint was rejected on January 30, 2007.

Plaintiff continues to experience "varying levels of pain" as well as "discoloration of his teeth and gums" as a result of his dental problems.

### F. Out–of–Cell Restrictions

Prisoners are permitted to leave their cells to exercise for a limited amount of time each week. Prison officials count time spent in the law library as out-of-cell exercise time. Petitioner filed an inmate complaint numbered WSPF–2006–28989, challenging the policy. Respondent Schneiter dismissed the complaint and respondent Raemisch denied petitioner's appeal.

### G. Segregation Policy

At the Jackson Correctional Institution, when an inmate is disciplined by being placed in segregation for a designated number of days, he is required to serve only 50% of the segregation "sentence" imposed on him. At the Wisconsin Secure Program Facility, prisoners serve 100% of their segregation time. No one told petitioner that different institutions have different segregation policies.

When an inmate at the Jackson Correctional Institute is disciplined with segregation, only those inmate who are not mentally ill will be considered for transfer to the Wisconsin Secure Program Facility. Petitioner does not have mental health problems; therefore, when he was placed in segregation he was considered eligible for transfer to the Wisconsin Secure Program Facility.

Petitioner filed an inmate complaint numbered WSPF–2006–28286, challenging the differential treatment of mentally ill and non-mentally ill inmates with respect to their eligibility for placement in the Wisconsin Secure Program Facility. Respondent Huibregtse dismissed the complaint and respondent Raemisch denied petitioner's appeal.

### H. Law Library

The law library at the Wisconsin Secure Program Facility is mainly computerized. A small, rotating collection of research books is also available. After arriving at the facility, petitioner filed inmate complaint number WSPF–2006–29504, in which he complained that none of the printed or electronic materials available in the library permitted him to determine whether any case found in the books or online had been overruled by later court decisions or statutes. On October 23, 2006, respondent Schneiter dismissed the complaint and on November 3, 2006, re-

spondent Raemisch denied petitioner's appeal.

## I. *Legal Loan Policy*

Repeatedly (as mentioned above), respondent Gerber has refused to mail petitioner's appeals of adverse complaint decisions. The Wisconsin Department of Corrections' Office of Legal Counsel has established guidelines for determining when a prison official should provide an inmate who has exceeded his annual "legal loan" limit free postage for his administrative appeal. The policy statement written by lawyer Kevin Potter, reads as follows:

> First, legal loan extensions do not have to be provided for all correspondence to the C[orrections] C[omplaint] E[xaminer]s. For instance, if an inmate is not appealing a decision, but rather just writing to complain about a[ ] R[eviewing] A[uthority] decision, an O[ffice] O[f the] S[ecretary] decision, or some other matter, we would not be required to provide postage.

> Since inmates are required to appeal R[eviewing] A[uthority] decisions to the C[orrections] C[omplaint] E[xaminer]s within 10 days in order to exhaust their administrative remedies and thereby retain their right to initiate civil actions, they *may* have a right to receive postage to mail all their appeals to the C[orrections] C[omplaint] E[xaminer]s. This right however is not absolute. In order to determine whether they have a right to access the courts you should apply the legal loan guidelines.

> If their complaint alleges that their bodily integrity is at stake (i.e. does # 1 of the guidelines apply?) their extension should be approved.

> If # 1 does not apply, then look to guideline # 2, i.e., is a fundamental constitutional right of basic human need at stake, or does the case involve a post-conviction remedy for the inmate's underlying criminal conviction? If not, then the inmate has no right to access the courts and extension may be denied. For example, if an inmate is appealing a[ ] R[eviewing] A[uthority] decision denying a complaint that his soup was cold, that would not involve a constitutional right or basic human need. Under those circumstances, his inability to get a stamp to timely file an appeal to the C[orrections] C[omplaint] E[xaminer]s, thereby preserving his right to file a civil action, would not constitute an infringement of his constitutional right to access to the courts.

> If, however, a constitutional right or basic human need is involved, the inmate must be given postage to appeal the R[eviewing] A[uthority] decision to the C[orrections] C[omplaint] E[xaminer]. In this situation, failure to give him the opportunity to appeal to the C [orrections] C [omplaint] E [xaminer] would preclude him from exhausting his administrative remedies and would constitute an infringement of his constitutional right to access the courts.

Although each of petitioner's complaints alleged that one or more of his constitutional rights had been violated by the actions of prison officials, respondent Gerber refused to give petitioner a legal loan extension so he could mail his appeals to the Corrections Complaint Examiner's office in a timely fashion. In a note to petitioner dated December 5, 2006, respondent Gerber stated:

> Legal loan extension will not be provided for I[nmate] C[omplaint] E[xaminer] appeals to the C[orrections] C[omplaint] E[xaminer] unless you are in imminent danger of serious physical injury or that your immediate health or safety are [sic] at risk.

Petitioner filed an inmate complaint numbered WSPF–2006–33336, challenging

respondent Gerber's implementation of the department's policy on loan extensions and asserting that she was denying him access to the courts by preventing him from exhausting his administrative options. The complaint was dismissed by respondent Hepp on November 27, 2006. Respondent Gerber refused to post petitioner's appeal.

## OPINION

### A. *Retaliation*

■ To state a retaliation claim, a prisoner must allege that he engaged in constitutionally protected conduct and that his protected actions prompted one or more prison officials to take adverse action against him. *Mt. Healthy Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Johnson v. Kingston,* 292 F.Supp.2d 1146, 1153 (W.D.Wis.2003). Petitioner contends that respondent Hepp transferred him to the Wisconsin Secure Program Facility several months after petitioner named Hepp as a defendant in *Kaufman v. Frank,* Case No. 06–C–205–C.

■ Inmates have a right of access to the courts. *Lewis v. Casey,* 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). If respondent Hepp transferred petitioner to the Wisconsin Secure Program Facility in retaliation for petitioner's decision to name Hepp as a defendant in Case No. 06–C–205–C, then respondent Hepp violated petitioner's First Amendment rights. Whether the lawsuit did motivate Hepp's decision remains to be seen; for now, petitioner has done enough to state a claim under the First Amendment. Therefore, petitioner will be granted leave to proceed on his claim that respondent Hepp transferred him to the Wisconsin Secure Program Facility because petitioner sued him in Case No. 06–C–205–C.

### B. *Free Speech*

As the Supreme Court reiterated recently in *Beard v. Banks,* —— U.S. ——, —— ——, 126 S.Ct. 2572, 2577–2578, 165 L.Ed.2d 697 (2006), "imprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment." At the same time, the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere. *Id.* When evaluating the reasonableness of a restriction placed on prisoners' constitutional rights, courts apply the standards enunciated in *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and *Overton v. Bazzetta,* 539 U.S. 126, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003). Under these standards, "prison regulations are permissible if they are 'reasonably related to legitimate penological interests' and are not an 'exaggerated response' to such objectives." *Beard,* 126 S.Ct. at 2578 (citing *Turner,* 482 U.S. at 87, 107 S.Ct. 2254). In determining whether restrictions meet these requirements, courts "accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton,* 539 U.S. at 132, 123 S.Ct. 2162.

■ Although the standards governing First Amendment claims in the prison context are highly deferential, deference comes only after defendants have had an opportunity to explain why they have curtailed inmates' rights and why their chosen method for doing so does not constitute an exaggerated response to a perceived penological interest. At the screening stage, the court's focus is on plaintiff's allegations alone and not the possible justifications for defendants' alleged actions. *Lindell v.*

1024

*Frank*, 377 F.3d 655, 658 (7th Cir.2004) (reversing dismissal of First Amendment claim at the screening stage where it was "impossible to evaluate the First Amendment implications" of the claim without more information about defendants' reason for curtailing petitioner's rights). So long as petitioner alleges that his constitutional rights have been curtailed and does not plead himself out of court by alleging facts inconsistent with his First Amendment claims, he must be granted leave to proceed. I turn, then, to petitioner's claim that respondents violated his right to free speech by denying him publications and refusing to deliver a letter he received on September 5, 2006.

 First, petitioner alleges that the Wisconsin Secure Program Facility has a policy prohibiting inmates in the step program from possessing any publications in their cells. As a result of this rule, petitioner has been prevented from possessing a local rule book from the District Court for the District of Columbia, an address list and a retail catalogue. In the absence of any legitimate reason to the contrary, petitioner has a constitutional right to receive any written material. *Griswold v. Connecticut*, 381 U.S. 479, 482, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) ("[T]he State may not, consistently with the spirit of the First Amendment, contract the spectrum of available knowledge. The right of freedom of speech and press includes not only the right to utter or print, but the right to distribute, the right to receive, the right to read and freedom of inquiry, freedom of thought...."). Because petitioner has alleged that prison officials had no reason to prohibit him from possessing written materials, he will be granted leave to proceed on his claim that respondents Schneiter, Raemisch and Huibregtse violated his rights under the First Amendment by enforcing the policy.

Second, petitioner challenges respondents Taylor's and Raemisch's decision to prohibit him from receiving a letter plaintiff sent to him by Robert Bernard on September 5, 2006. According to petitioner, prison officials refused to explain their reason for denying delivery. Because it is not clear whether prison officials were justified in withholding delivery of Bernard's letter, petitioner will be granted leave to proceed on his claim that respondents Taylor and Raemisch violated his rights under the First Amendment by not delivering the September 5, 2006 letter.

C. *Free Exercise and RLUIPA*

Inmates alleging that government officials have impeded their ability to practice their religious beliefs have two means of recourse: the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc–1, and the free exercise clause of the First Amendment.

The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc–1(a)(1)–(2), prohibits the government from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." *Cutter v. Wilkinson*, 544 U.S. 709, 125 S.Ct. 2113, 2114, 161 L.Ed.2d 1020 (2005). RLUIPA is designed to "protect[ ] institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Id.* at 2122.

The protections afforded by RLUIPA apply where:

(1) the substantial burden is imposed in a program or activity that receives Federal financial assistance; or

(2) the substantial burden affects, or removal of that substantial burden would

affect, commerce with foreign nations, among the several States, or with Indian tribes.

42 U.S.C. § 2000cc–1(b). Because the Wisconsin Department of Corrections receives and uses federal grant money for substance abuse treatment programs in its state prison facilities, the requirements of the Act apply to it.

■ Ultimately, to prove a RLUIPA claim, a plaintiff bears the burden of establishing that defendants placed a substantial burden on the exercise of the plaintiff's religious beliefs. 42 U.S.C. § 2000cc–2(b); *Hernandez v. Commissioner,* 490 U.S. 680, 699, 109 S.Ct. 2136, 104 L.Ed.2d 766 (1989). Although RLUIPA does not define the term "substantial burden," the Court of Appeals for the Seventh Circuit has held that a substantial burden is "one that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise ... effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752, 761 (7th Cir.2003). Under the statute, a "religious exercise" is "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A).

■ Under RLUIPA, once a prisoner has shown that the actions of government officials have significantly burdened the exercise of the plaintiff's religious beliefs, the burden shifts to defendants to demonstrate that their decision was the least restrictive means of furthering a compelling government interest. *See, e.g., Murphy v. Zoning Comm'n of the Town of New Milford,* 148 F.Supp.2d 173, 187 (D.Conn.2001). If they can do so, the RLUIPA claim fails.

The protections offered by the First Amendment are more limited than those extended under RLUIPA. Therefore, any claim that fails under RLUIPA will fail inevitably under the First Amendment's more stringent requirements. Although RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," 42 U.S.C. § 2000cc–5(7), traditional First Amendment jurisprudence protects only "the observation of [ ] central religious belief[s] or practice[s]." *Civil Liberties for Urban Believers,* 342 F.3d at 760.

■ Because the free exercise clause allows states to enforce neutral laws of general applicability even when those laws significantly burden religious practices, *Employment Division Department of Human Resources of Oregon v. Smith,* 494 U.S. 872, 887, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), the clause is violated only when the government intentionally targets a particular religion or religious practice, *Sasnett v. Sullivan,* 91 F.3d 1018, 1020 (7th Cir.1996), vacated on other grounds, 521 U.S. 1114, 117 S.Ct. 2502, 138 L.Ed.2d 1007 (1997).

Petitioner is an atheist. He contends that prison officials have violated his rights under the free exercise clause and RLUIPA in three ways: (1) by refusing to authorize a study group for inmates who have described themselves as atheists, freethinkers, humanists and "other" and those who have identified themselves to prison officials as having no religious preference; (2) by failing to provide petitioner with publications about atheism; and (3) by preventing him from ordering publications about atheism.

■ Petitioner has not stated a claim under the free exercise clause for one simple reason. He does not allege (nor is it possible to see how he could plausibly do so) that merely reading books about atheism or meeting in a study group with inmates of various philosophical bents constitutes the exercise of his religion, that is "the observation of [ ] central religious belief[s] or practice[s]" of atheism. *Civil*

*Liberties for Urban Believers,* 342 F.3d at 760. Therefore, petitioner must be denied leave to proceed on his claim that respondents Taylor, Hepp and Huibregtse violated his First Amendment free exercise rights by refusing to provide him with materials about atheism or to authorize a study groups for atheist, humanist and freethinking inmates and inmates with no or an "other" religious preference.

■ With respect to petitioner's claims under RLUIPA, petitioner alleges first that prison officials refused to provide him with written material about atheism, despite his repeated request that they do so. However, petitioner's factual allegations reveal that the prison chaplain *did* provide him with 12 pages of reading material on atheism, which was all the prison chaplain had in his possession. Although the material was limited in quantity, it was provided to petitioner. More important, prison officials are not required to locate, purchase or provide religious items for inmates. E.g., *Lewis v. Sullivan,* 279 F.3d 526, 528 (7th Cir.2002) ("[T]here is no constitutional entitlement to subsidy."). They are required only to refrain from interfering with inmates' ability to locate, purchase and obtain such materials on their own, at least insofar as obtaining such items is not inconsistent with legitimate prison interests. Because prison officials did not place any burden on petitioner's right to freely practice his religious beliefs by declining to provide him with additional atheist materials, petitioner will be denied leave to proceed on his claim that respondent Huibregtse violated his rights under RLUIPA by failing to provide him with atheist publications.

However, petitioner alleges also that prison officials prevented him from ordering books about atheism. It is not clear how he was prevented from doing so, though two possibilities are apparent. It may be that petitioner was unable to or-

der books about atheism because of his indigency. If so, prison officials have not violated his rights because they are not required to subsidize his religious expression. Nevertheless, it may be that petitioner was unable to order books about atheism because of the facility's ban on publications, discussed in § B, above. If so, the actions of prison officials may have violated his rights under the free exercise clause and RLUIPA as well as the free speech clause of the First Amendment. Although it is not clear that the prison policy banning publications (1) extended to religious materials and (2) was applied to petitioner to prevent him from ordering atheist publications, at this stage in the proceedings, petitioner has done enough to state a claim. Therefore, I will grant him leave to proceed the claim that respondents Schneiter, Raemisch and Huibregtse violated his right to practice his atheist beliefs by preventing him from ordering publications about atheism in violation of the free exercise clause and RLUIPA.

Next, petitioner alleges that prison officials refused to authorize a study group for inmates who designate themselves as atheists, humanists, freethinkers and "other" and inmates who have no religious preference. To put petitioner's claim in context, it is helpful to summarize briefly petitioner's past litigation on the issue of inmate study groups. In Case No. 03–C–027–C, petitioner brought a claim against prison officials contending that they had violated his rights under the free exercise and establishment clauses by refusing to allow him to form a study group for atheist inmates on the same terms the prison authorized study groups for inmates of other faith traditions. This court dismissed petitioner's claims for failure to state a claim upon which relief could be granted. *Kaufman v. McCaughtry,* 2004 WL 257133 (W.D.Wis. Feb.9, 2004). In

*Kaufman v. McCaughtry,* 419 F.3d 678, 684 (7th Cir.2005), the court of appeals upheld the decision to dismiss petitioner's free exercise claim because petitioner could not show that the decision to deny him a study group burdened his right to exercise his atheism in any significant way. However, the court of appeals reversed the decision to deny petitioner's establishment clause claim on the ground that petitioner's sincerely held atheist beliefs were entitled to accommodation on the same terms as the accommodations granted to prisoners of other faith traditions.

■■ Nevertheless, the court was quick to note that prison officials are not required to indulge secular interests in the same way they are required to accommodate religious beliefs. *Id.* ("[N]o one says that a person who wants to form a chess club at the prison is entitled under the Establishment Clause to have the application evaluated as if chess were a religion, no matter how devoted he is to the game."). In this case, petitioner is not challenging the prison's decision to deny atheists the opportunity to meet together to discuss their commonly held religious beliefs. Instead, petitioner alleges that he asked prison officials to authorize a group for inmates of differing religious and philosophical persuasions, including inmates with no religious preference at all, to meet together to discuss their differing ideas. Such an activity is more akin to a debate society meeting than to a group religious practice. Although petitioner might wish to share his atheist beliefs with others (just as a Christian inmate might wish to evangelize his fellow prisoners), prison officials do not violate inmates' free exercise rights when they refuse to permit gathering of inmates of different religious or philosophical persuasions for the purpose of facilitating inter-religious dialogue. By refusing to authorize a study group for inmates who designate themselves as atheists, humanists, freethinkers and "other"

and inmates who have no religious preference, respondents Taylor and Hepp did not violated petitioner's rights under the free exercise clause or RLUIPA. Consequently, petitioner will be denied leave to proceed on his claim that they did.

### D. *Deliberate Indifference to Medical Needs*

■■ "[T]he Eighth Amendment requires the government " 'to provide medical care for those whom it is punishing by incarceration.' " " *Snipes v. DeTella,* 95 F.3d 586, 590 (7th Cir.1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). When prison officials act with deliberate indifference to inmate health or safety, they violate this constitutional mandate. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Court of Appeals for the Seventh Circuit has held that "serious medical needs" are not only conditions that are life threatening or that carry risks of permanent, serious impairment if left untreated, but also those in which the withholding of medical care results in needless pain and suffering. *Gutierrez v. Peters,* 111 F.3d 1364, 1371 (7th Cir.1997). Dental problems may qualify as serious medical needs. *Board v. Farnham,* 394 F.3d 469, 480 (7th Cir.2005) ("[D]ental care is one of the most important medical needs of inmates.").

■■ Petitioner alleges that he is in pain from a tooth that is cutting into his tongue. Although he has alerted prison medical staff to his need for dental treatment, they have placed him on a waiting list that will take approximately 12 months to complete and refuse to move him forward on the list. Those allegations are sufficient to state a claim under the Eighth Amendment.

Nevertheless, there is a problem with the timing of petitioner's claim. Under

the 1996 Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), prisoners must exhaust administrative remedies before bringing federal civil rights lawsuits. Petitioner's allegations regarding lack of dental treatment were included in his "supplemental complaint" submitted to the court on February 2, 2002. In that supplemental complaint, petitioner alleged that he filed two inmate complaints regarding his lack of dental care: WSPF–2007–1201 and WSPF–2007–2062. Petitioner acknowledged that his appeal of inmate complaint WSPF–2007–1201 was not decided until January 26, 2007, ten days after petitioner filed his complaint in this lawsuit. Petitioner's inmate complaint WSPF–2007–2062 was rejected on January 30, 2007.

■■■■ Normally, exhaustion of administrative remedies is an affirmative defense that respondents bear the burden of pleading and proving. *Jones v. Bock,* —— U.S. ——, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007); *Walker v. Thompson,* 288 F.3d 1005, 1009 (7th Cir.2002). However, exhaustion is also "a condition precedent to suit" and unless the exhaustion requirement has been satisfied, district courts lack discretion to decide claims on their merits. *Dixon v. Page,* 291 F.3d 485, 488 (7th Cir.2002). Therefore, when the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous, the district judge need not wait for an answer before dismissing the suit. *Walker,* 288 F.3d at 1009–1010.

■■■ In this case, it is clear that although petitioner exhausted his administrative remedies, he did so only after he filed suit in this case. In *Perez v. Wisconsin Dept. of Corrections,* 182 F.3d 532, 535 (7th Cir.1999), the Court of Appeals for the Seventh Circuit held that a suit must be dismissed when it is brought by a prisoner before his administrative remedies have been exhausted in full. A district court

lacks "discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Id.* In *Ford v. Johnson,* 362 F.3d 395, 398–99 (7th Cir.2004), the court held that a lawsuit is "brought" within the meaning of the exhaustion statute "when the complaint is tendered to the district clerk."

The only instance in which the court of appeals has allowed a prisoner to exhaust his administrative remedies after beginning his lawsuit is in *Barnes v. Briley,* 420 F.3d 673 (7th Cir.2005), a case in which the facts pertaining to exhaustion were unique and entirely distinguishable from cases such as this one. In *Barnes,* the pro se plaintiff originally filed his complaint under the Federal Tort Claims Act. Although Barnes had exhausted his administrative remedies under the act, he had not taken his claim through the prison's inmate complaint system. Subsequently, Barnes was assigned appointed counsel, who determined that plaintiff's claim was properly brought under 42 U.S.C. § 1983 rather than the Tort Claims Act. Counsel initiated the prison grievance process and, once plaintiff had exhausted his administrative remedies, Barnes dismissed his Tort Claims Act claim against the defendant United States and, with leave of the district court, amended his complaint to allege § 1983 claims against entirely new defendants. In that rare instance, the court of appeals held that Barnes had properly exhausted his administrative remedies under the Prison Litigation Reform Act because his amended complaint was "the functional equivalent of filing a new complaint." *Barnes,* 420 F.3d at 678. The court noted expressly that this was not a situation in which Barnes was attempting to replead improperly exhausted claims in an amended complaint, which would be forbidden under *Perez* and *Ford. Id.*

Had petitioner received the decision dismissing inmate complaint WSPF–2007–1201 before he filed his federal lawsuit, he would have exhausted his administrative remedies as required under § 1997e(a). However, because he filed his lawsuit before receiving a final answer, he failed to exhaust his administrative remedies in the context of this lawsuit, and therefore must be denied leave to proceed on his claim that respondent Thorpe violated his Eighth Amendment right to medical care by denying him timely access to dental treatment.

### E. *Policies and Procedures*

### 1. *Segregation policy*

a. Length of segregation

■ According to petitioner, when an inmate at the Jackson Correctional Facility breaks a rule and incurs disciplinary segregation as a result the infraction, it is the institution's practice to require inmates to serve only half of their assigned segregation time. At the Wisconsin Secure Program Facility, inmates are required to serve 100% of their segregation "sentences." To the extent that petitioner is challenging the method by which the Wisconsin Secure Program Facility measures segregation time, he fails to state a claim.

■ Although the Jackson Correctional Institution's policy appears to be more lenient than that of the Wisconsin Secure Program Facility, prisons are under no constitutional obligation to implement their rules in any particular way. Petitioner does not allege that he is required to serve more time than he "deserves" in segregation at the facility, only that he is required to serve the full segregation sentence imposed upon him as a result of disciplinary violations.

The prison is not obligated to release petitioner from segregation before he has served the full period to which he was sentenced, even if the Jackson Correction-

al Institution makes it a practice of releasing its inmates from segregation early. (I note that in 2005, the Jackson Correctional Institution housed 985 inmates in a prison with an operating capacity of 837. Wisconsin Department of Corrections, *Jackson Correctional Institution Annual Report FY 2005*, at 5. By contrast, in 2005, the Wisconsin Secure Program Facility housed 391 inmates in a prison designed to house 423. Wisconsin Department of Corrections, *Wisconsin Secure Program Facility FY 2005 Annual Report*, at 4. It is not unreasonable to infer that segregation cell space may be in higher demand at the Jackson Correctional Institution than at the Wisconsin Secure Program Facility.) Because the facts petitioner has alleged do not implicate any constitutional or federal right, he will be denied leave to proceed on his claim that respondents Huibregtse and Raemisch violated his rights by confining him in segregation for the full duration of his segregation sentence.

b. Differential treatment of the non-mentally ill

■ It appears from petitioner's complaint that he may be contending that his right to equal protection has been violated by the Wisconsin Department of Corrections' policy that prohibits seriously mentally ill inmates from being confined at the Wisconsin Secure Program Facility. If so, his claim is frivolous.

In *Jones 'El v. Litscher,* Case No. 00–C–421–C, a class action lawsuit that challenged the conditions of confinement at the Wisconsin Secure Program Facility, I entered a consent decree on March 28, 2002. Under the terms of that decree, the Wisconsin Department of Corrections agreed not to transfer or house seriously mentally ill inmates at the facility out of concern that doing so might well violate the inmates' right to be free from cruel and

unusual punishment. Petitioner may believe that the facility's oppressive conditions are detrimental to him, too; however, petitioner's right to equal protection would be violated only if there were no rational reason for distinguishing between him and the serious mentally ill inmates who are barred from transfer to the prison. That is simply not the case. Because the prison has a legitimate reason for preventing psychologically vulnerable inmates from being subject to the extreme isolation and deprivations that attend placement at the facility, petitioner has not stated a claim under the Fourteenth Amendment. He will be denied leave to proceed on his claim that respondents Huibregtse and Raemisch violated his right to equal protection by confining only prisoners who are not seriously mentally ill at the Wisconsin Secure Program Facility.

### 2. *Law library*

Petitioner complains that the law library at the Wisconsin Secure Program Facility lacks research tools to enable him to determine whether the cases he finds in the library have been overruled or distinguished by later cases (a process commonly known as "Sheparizing"). Petitioner contends that respondents Schneiter and Raemisch violated his right of access to the courts by dismissing the inmate complaint in which he challenged the prison's failure to provide these research tools.

Prisoners have a constitutional right of access to the courts for pursuing post-conviction remedies and for challenging the conditions of their confinement. *Lehn v. Holmes*, 364 F.3d 862, 865–66 (7th Cir.2004). They do not, however, have a right to "any specific resources such as a law library or a laptop with a CD–ROM drive or a particular type of assistance." *Id.* at 868. Those "particular types of assistance" include the research tools petitioner is seeking in this lawsuit.

Sensitive to the limitations *pro se* prisoners face when researching their legal claims, courts engage routinely in independent research to identify the law governing *pro se* lawsuits. Petitioner's inability to "Shepardize" may be irritating to him, but it unlikely to have a material effect on his ability to litigate his claims in this lawsuit or any other. Because plaintiff has no constitutional right to the legal research tools he seeks, he will be denied leave to proceed on his claim that respondents Schneiter and Raemisch violated his right of access to the courts by dismissing his inmate complaint challenging his inability to "shepardize" case law using the prison law library.

### 3. *"Out of cell" policy*

Petitioner alleges that the policies of the Wisconsin Secure Program Facility require him to choose between using his limited out-of-cell time for either exercise or the law library, an allegation supported by the exhaustion documents petitioner has attached to his complaint. Petitioner contends that this policy impermissibly requires him to choose between his constitutional right of access to the courts and his constitutional right of access to adequate opportunity for exercise. *Cf. Lehn*, 364 F.3d at 865–66 (7th Cir.2004) (prisoners have right of access to courts for pursuing post-conviction remedies and for challenging conditions of confinement); *Davenport v. DeRobertis*, 844 F.2d 1310 (7th Cir.1988) (approving district court order requiring prison officials to provide inmates with five hours' out-of-cell exercise time).

Petitioner's claim could be interpreted in one of two ways. Either he is contending that his right of access to the courts was violated because he used his limited out-of-cell time to exercise or he is contending that his Eighth Amendment right to be avoid conditions that pose a threat to his

health and safety was violated when he used his limited out-of-cell time to pursue his litigation rather than to exercise.

■ "The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts without undue interference." *Snyder v. Nolen,* 380 F.3d 279, 291 (7th Cir. 2004). The right of individuals to pursue legal redress for claims that have a reasonable basis in law or fact is protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process. *Id.; Johnson v. Atkins,* 999 F.2d 99, 100 (5th Cir.1993) ("Meaningful access to the courts is a fundamental constitutional right, grounded in the First Amendment right to petition and the Fifth and Fourteenth Amendment due process clauses."). A prisoner states an access to courts claim when he alleges that he was impeded from initiating a lawsuit or was prevented from litigating a potentially meritorious claim because he was denied access to necessary legal materials. *Marshall v. Knight,* 445 F.3d 965, 969 (7th Cir.2006). Because petitioner does not allege that the prison's policy prevented him from litigating a nonfrivolous lawsuit, he has not stated an access to courts claim.

■ However, petitioner has alleged facts suggesting that his Eighth Amendment rights may have been violated. To state a claim under the Eighth Amendment, an inmate must allege the existence of an objectively serious injury to which prison officials were deliberately indifferent. *Delaney v. DeTella,* 256 F.3d 679, 683 (7th Cir.2001). The Court of Appeals for the Seventh Circuit has stated that a denial of exercise may constitute an objectively serious injury when it is "extreme and prolonged" and "movement is denied to the point that the inmate's health is threatened." *Antonelli v. Sheahan,* 81 F.3d 1422, 1432 (7th Cir.1995) (citing *Harris v. Fleming,* 839 F.2d 1232, 1236 (7th

Cir.1988)); *see also Anderson v. Romero,* 72 F.3d 518, 527–28 (7th Cir.1995); *French v. Owens,* 777 F.2d 1250, 1255–56 (7th Cir.1985). To the extent that petitioner suggests that he was unable to obtain needed exercise because respondents Schneiter and Raemisch counted his law library time as exercise time, he has stated a claim under the Eighth Amendment.

■ As the presiding judge in the *Jones 'El* litigation (*see supra* at § E.1.a.), I am aware that prison officials have agreed recently to amend their out-of-cell policy and plan to no longer count time spent in the law library against out of cell exercise time. Therefore, insofar as petitioner seeks injunctive and declaratory relief on this claim, his Eighth Amendment claim is moot. Nevertheless, if petitioner is able to prove that he was forced to forgo needed exercise in order to spend time in the law library, he may still have a claim for money damages for past violations of his rights. Therefore, I will grant petitioner leave to proceed on his claim that respondents Schneiter and Raemisch violated his rights under the Eighth Amendment by forcing him to choose between out-of-cell exercise and time spent in the prison law library.

### 4. *Legal loan policy*

Section DOC 309.51(1) of the Wisconsin Administrative Code provides that inmates may receive loans of up to $200 each year to purchase "paper, photocopy work, or postage" for "correspondence to courts, attorneys, parties in litigation, the inmate complaint review system or the parole board." The loans authorized by DOC § 309.51 are not "funds which are disbursed or credited to an inmate's account to be used as he wishes but rather [are] simultaneous credits and debits ... for the sole purpose of enabling prisoners to purchase paper, photocopy work, or postage

on credit." *Lindell v. McCallum,* 352 F.3d 1107, 1111 (7th Cir.2003) (citing *Luedtke v. Bertrand,* 32 F.Supp.2d 1074, 1076 (E.D.Wis.1999)). Under the terms of § 309.51(1), "[t]he $200 loan limit may be exceeded with the superintendent's approval if [an] inmate demonstrates an extraordinary need, such as a court order requiring submission of specified documents." Grants of legal loans in excess of $200 annually are known in Department of Corrections parlance as legal loan "extensions."

■ It is unclear how far prisons must go in helping prisoners exhaust their administrative remedies. On one hand, prisoners have "no constitutional entitlement to subsidy" in prosecuting their civil lawsuits. *Id.; Lewis v. Sullivan,* 279 F.3d 526, 528 (7th Cir.2002). On the other, prisoners have a right of access to the courts, and administrative exhaustion is a mandatory precursor to any federal civil rights lawsuit filed by a prisoner. *Woodford v. Ngo,* — U.S. —, —, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006).

If the policy promulgated by the prison is the one petitioner has set forth in his complaint, it is a generous one, erring on the side of caution with respect to the matters for which legal loan extensions will be granted. Its application, however, appears less than consistent. Although the policy states that legal loan extensions are to be granted with respect to complaints that raise constitutional issues, respondent Gerber refused to provide petitioner with a legal loan extension unless he was "in imminent danger of serious physical injury or [his] immediate health or safety [was] at risk." When petitioner tried to challenge respondent Gerber's application of the loan extension policy, respondent Hepp dismissed the complaint.

■ Regardless what the prison policy may be, or how it is being implemented, petitioner's complaint regarding the manner in which Wisconsin prison officials have exercised their discretion to deny him legal loan extensions does not state a claim of any freestanding constitutional violation. Moreover, because exhaustion is an affirmative defense which respondents bear the burden of proving, *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir.2004), I need not decide at this stage of the proceedings whether petitioner has exhausted his administrative remedies with regard to each claim on which he has been given leave to proceed. However, to the extent that petitioner is anticipating arguments prison officials may raise later in this lawsuit, I note that the Prison Litigation Reform Act requires prisoners to exhaust only those remedies that are made available to them. *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir.2006) ("Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting."); *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir.2002); *Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir.2004). If, by reason of indigence, petitioner was unable to post his grievance appeal and respondents did not provide an alternative means of appealing, it is difficult to see how the appeal process would be "available" to him. Consequently, respondents should be aware that any attempt to dismiss petitioner's claims for failure to exhaust on the ground that he was too poor to post an appeal is unlikely to succeed.

## ORDER

IT IS ORDERED that petitioner James Kaufman's request for leave to proceed *in forma pauperis* is

1. GRANTED with respect to his claims that

a) respondent Hepp transferred him to the Wisconsin Secure Program Facility because petitioner sued him in Case No. 06–C–205–C;

b) respondents Schneiter, Raemisch and Huibregtse violated his First Amendment rights by upholding a prison policy under which he is denied all publications;

c) respondents Taylor and Raemisch violated his rights under the First Amendment by not delivering his September 5, 2006 letter;

d) respondents Schneiter, Raemisch and Huibregtse violated his right to practice his atheist beliefs by preventing him from ordering publications about atheism in violation of the free exercise clause and RLUIPA; and

e) respondents Schneiter and Raemisch violated his rights under the Eighth Amendment by forcing him to choose between out-of-cell exercise and time spent in the prison law library.

2. DENIED with respect to his claims that

a) respondent Huibregtse violated his right to practice his atheist beliefs by refusing to provide him with publications about atheism in violation of the free exercise clause and RLUIPA;

b) respondents Taylor and Hepp violated his right to practice his atheist beliefs by refusing to approve a study group for inmates who designate themselves as atheists, humanists, freethinkers and "other" and inmates who have no religious preference, in violation of the free exercise clause and RLUIPA;

c) respondent Thorpe violated his Eighth Amendment right to medical care by denying him timely access to dental treatment;

d) unidentified prison officials violated his rights by retaining him in segregation for the full duration of his assigned period of segregation;

e) respondents Huibregtse and Raemisch violated his right to equal protection by confining only prisoners who are not seriously mentally ill at the Wisconsin Secure Program Facility;

f) respondents Schneiter and Raemisch violated his right of access to the courts by failing to provide "Shepardizing" tools in the Wisconsin Secure Program Facility's law library;

g) respondents Gerber and Hepp violated his right of access to the courts by denying him postage for his administrative appeals;

3. Respondents T. Gerber, Mary Miller, and Cynthia Thorpe are DISMISSED from this lawsuit;

4. For the remainder of this lawsuit, petitioner must send respondents Hepp, Huibregtse, Schneiter, Raemisch and Taylor a copy of every paper or document that he files with the court. Once petitioner has learned what lawyer will be representing respondents, he should serve the lawyer directly rather than respondents. The court will disregard any documents submitted by petitioner unless petitioner shows on the court's copy that he has sent a copy to respondents or to respondents' lawyer.

6. Petitioner should keep a copy of all documents for his own files. If petitioner does not have access to a photocopy machine, he may send out identical handwritten or typed copies of his documents.

7. The unpaid balance of petitioner's filing fee is $350.00; petitioner is obligated to pay this amount when he has the means to do so, as described in 28 U.S.C. § 1915(b)(2).

8. Pursuant to an informal service agreement between the Attorney General and this court, copies of petitioner's complaint and this order are being sent today

to the Attorney General for service on respondents.